OPINION OF THE COURT
SLOVITER, Circuit Judge.
Marvon Merritt appeals from the order of the District Court dismissing his peti *159 tion for habeas corpus as time-barred under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Merritt v. Blaine, No. 00-2388 (E.D.Pa. May 29, 2001). Merritt argues that the District Court erred by not tolling the statute of limitations for his federal habeas corpus petition during the period of time he was pursuing post-conviction relief in state court under the Pennsylvania Post Conviction Relief Act, 42 Pa. Cons.Stat. Ann. §§ 9541-9546 (1998) (PCRA). This court granted Merritt’s request for a certificate of appealability with respect to two issues:
(1) whether the invocation in a state application for post-conviction relief of a statutory exception to the state’s timeliness requirement renders the application “properly filed” within the meaning of 28 U.S.C. § 2244(d)(2); and (2) whether appellant has established “extraordinary circumstances” warranting the equitable tolling of that limitations period.
Merritt v. Blaine, No. 01-2455 (3d Cir. May 20, 2002). We hold that an untimely application for state post-conviction relief by a petitioner, who sought but was denied application of a statutory exception to the PCRA’s time bar, is not “properly filed” under 28 U.S.C. § 2244(d)(2). We also agree with the District Court’s rejection of Merritt’s request for equitable tolling of the statute of limitations. Therefore, we will affirm.
I.
FACTS AND PROCEDURAL BACKGROUND
Merritt was convicted of murder of the second degree, robbery, criminal conspiracy and possession of the instrument of a crime for his participation in the fatal shooting of George Dunbar in Philadelphia, Pennsylvania. Dunbar was killed when Merritt and his co-conspirator Ronald Baxter sought to rob Dunbar at his home. After Merritt brandished a gun, Dunbar took out a gun and fired two shots. Dunbar and Merritt struggled, while Baxter and Robert Wells, who was present, also fought. It was the Commonwealth’s position that Merritt shot Dunbar after Dunbar fell to the floor. Baxter was shot in the leg.
At trial, Merritt presented as his defense that the state’s witness, Wells, shot both Dunbar and Baxter. As stated, the jury convicted Merritt. The Superior Court of Pennsylvania affirmed Merritt’s conviction and sentence on October 9, 1986, Commonwealth v. Merritt, 361 Pa.Super. 636, 517 A.2d 1365 (1986) (table), and the Supreme Court of Pennsylvania denied Merritt’s petition for allowance of appeal on July 7, 1987. Commonwealth v. Merritt, 516 Pa. 639, 533 A.2d 711 (1987) (table).
Merritt filed his first post-conviction review petition in state court on June 21, 1988, pursuant to the PCRA. After appointing counsel and allowing an amended petition, the PCRA court denied relief on November 9, 1993. The denial was affirmed by the Pennsylvania Superior Court on January 17, 1995, Commonwealth v. Monroe (a name Merritt also used), 442 Pa.Super. 659, 660 A.2d 123 (1995) (table), and the Pennsylvania Supreme Court denied allowance of appeal on November 8, 1995, Commonwealth v. Monroe, 542 Pa. 663, 668 A.2d 1127 (1995) (table).
On December 20, 1996, Merritt filed a second pro se PCRA petition in state court. Merritt alleged that he had recently learned of a new technology, the Scanning Electron Microscope (SEM), that was not available at the time of his trial. He alleged that SEM could be used to determine if the bullet that killed Dunbar and *160 the bullet that wounded Baxter came from the same gun. Merritt argued that identifying the source of the bullets was essential to his defense at trial that Wells shot both Dunbar and Baxter, while the state argued at trial that Dunbar and Baxter were shot by different persons. Merritt asked the PCRA court to order a SEM analysis of the bullets.[1]
The PCRA court appointed counsel for Merritt. Counsel requested, and the court granted, additional time to file an amended petition. However, before the amended petition was filed, the PCRA court denied Merritt’s pro se PCRA petition without a hearing.[2] Commonwealth v. Monroe, Nos. 1736-39 (Phila.Co.Ct.C.P. August 12, 1997) (order dismissing second PCRA petition); Commonwealth v. Monroe, Super. Ct. No. 3909 Phila. 1997 (Phila. Co. Ct. C.P. April 12, 1998) (opinion dismissing second PCRA petition). The court denied the petition both on the merits and because it was untimely.
On the merits, the court held that (1) Merritt failed to establish in sufficient form and substance the facts stated in support of his grounds for relief; (2) Merritt neither alleged nor established that SEM results constitute such scientifically adduced evidence as is qualified as admissible at trial; (3) the issue of the sufficiency of the evidence to support Merritt’s convictions had been previously litigated and “is presently waived”; (4) Merritt faded to present evidence sufficient to establish a strong prima facie showing that a miscarriage of justice may have occurred; and, in addition, Merritt’s ineffective assistance of counsel claims failed because the SEM analysis would have been cumulative and therefore did not affect the outcome of the trial and because counsel cannot be held ineffective for failure to predict future technological changes found to be acceptable devices to produce reliable ballistics evidence. Commonwealth v. Monroe, Nos. 1736-39, order at 3-6 (Phila.Co.Ct.C.P. August 12, 1997). The court held alternatively that the petition was untimely filed under 42 Pa. Cons.Stat. Ann. § 9545(b)(1) because it was not filed within a year of the date Merritt’s conviction became final and “none of the exceptions [to the PCRA’s timeliness requirements] to be found in § 9545(b)(1)(i)(ii)(iii) were alleged or proven....” Commonwealth v. Monroe, Nos. 1736-39, order at 7 (Phila.Co.Ct.C.P. August 12, 1997).
On October 12, 1999, the Pennsylvania Superior Court affirmed the dismissal of the petition because it was time-barred, holding that Merritt failed to allege or prove any of the applicable exceptions under 42 Pa. Cons.Stat. Ann. § 9545(b)(1). Commonwealth v. Monroe, No. 3909 Phila.1997, slip op. at 4, 748 A.2d 774 (Pa.Super.Oct. 12, 1999). The Supreme Court of Pennsylvania denied allowance of appeal on February 24, 2000.
On May 5, 2000, Merritt filed this petition for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania. He argued that the state court’s refusal to order the SEM analysis denied his rights to due process, equal protection and effective assistance of counsel. The Magistrate Judge recommended denial of Merritt’s petition as time-barred. The Magistrate Judge recognized that 28 U.S.C. § 2244(d)(2) tolls AEDPA’s statute of limitations while any “properly filed” application for state post- *161 conviction relief is pending, but reasoned that because the state court had found Merritt’s second PCRA petition to be untimely, it was “not properly filed and it cannot serve to statutorily toll the habeas period of limitations.” App. at 9. The Magistrate Judge also found that Merritt was not eligible for equitable relief from AEDPA’s statute of limitations because Merritt failed to demonstrate the “extraordinary circumstances” necessary for equitable tolling.
The District Court adopted and approved the Magistrate Judge’s report and recommendation. Merritt v. Blaine, No. 00-2338 (E.D.Pa. May 29, 2001). Merritt filed a Notice of Appeal on June 6, 2001, and we granted the certificate of appeala-bility. We consider first whether Merritt’s second PCRA application was “properly filed” under 28 U.S.C. § 2244(d)(2) and, if not, whether he is entitled to equitable tolling of the habeas corpus statute of limitations.
II.
DISCUSSION
A. Jurisdiction and Standard of Review
Merritt filed his petition for habeas corpus under 28 U.S.C. § 2254. The District Court exercised jurisdiction over the petition under 28 U.S.C. § 2254(a). We have jurisdiction over the District Court’s final order dismissing the petition as untimely pursuant to 28 U.S.C. §§ 1291 and 2253. ‘We have plenary review over statute of limitations issues.” Nara v. Frank, 264 F.3d 310, 314 (3d Cir.2001).
B. AEDPA’s Statute of Limitations
AEDPA imposes a one-year statute of limitations on applications for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). Under 28 U.S.C. § 2244(d)(1)(A), the statute of limitations begins to run from “the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.” In this case, Merritt’s conviction became final prior to the enactment of AEDPA. By its terms, AEDPA became effective on April 24, 1996. Therefore, the statute of limitations for Merritt’s habeas petition did not begin to run until April 24, 1996. We “implied from the statute a one-year grace period for those petitioners whose convictions became final before the effective date of AEDPA....” Nara, 264 F.3d at 315; see Burns v. Morton, 134 F.3d 109, 111 (3d Cir.1998) (“we hold that habeas petitions filed on or before April 23, 1997, may not be dismissed for failure to comply with § 2244(d)(1)’s time limit”). However, Merritt did not file his habeas corpus petition until May 5, 2000, more than three years after the expiration of the statute of limitations.
The statute of limitations for federal habeas corpus petitions is subject to two tolling exceptions: (1) statutory tolling during the time a “properly filed” application for state post-conviction review is pending in state court and (2) equitable tolling, a judicially crafted exception. Jones v. Morton, 195 F.3d 153, 158 (3d Cir.1999).
C.“Properly Filed” Application for State Post-Conviction Relief
AEDPA expressly provides that its one-year limitation is tolled for the “time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.” 28 U.S.C. § 2244(d)(2). Merritt’s second PCRA petition was pending in state court from December 20, 1996 through February 24, 2000. Therefore, if Merritt’s second PCRA petition were “properly filed,” the *162 statute of limitations for his habeas petition would have been tolled from December 20, 1996, the date his second PCRA petition was filed in state court, through February 24, 2000, and his habeas corpus petition, filed on May 5, 2000, would be timely.
However, to fall within the AEDPA tolling provision, the petition for state post-conviction review must have been both pending and “properly filed.” Fahy v. Horn, 240 F.3d 239, 243 (3d Cir.), cert. denied, Horn v. Fahy, 534 U.S. 944, 122 S.Ct. 323, 151 L.Ed.2d 241 (2001). There is no question that Merritt’s second PCRA petition was pending. The principal issue on this appeal is whether it was “properly filed.”
The Supreme Court has stated that “an application is ‘properly filed’ when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.” Artuz v. Bennett, 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000) (emphasis in original). This compliance requirement includes rules governing the “form of the document” and “the time limits upon its delivery.” Id.; see also Fahy, 240 F.3d at 243 (a “properly filed” application must be “ ‘submitted according to the state’s procedural requirements, such as the rules governing the time and place of filing’ ”) (citation omitted).
Merritt failed to file his second PCRA petition in accordance with the timeliness requirements of 42 Pa. Cons.Stat. Ann. § 9545(b)(1). However, the PCRA includes statutory exceptions to its time bar that apply when:
(i)the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.
42 Pa. Cons.Stat. Ann. §§ 9545(b)(l)(i)-(iii).
Merritt does not contend that he falls within subparagraph (i) or (iii) above. Instead, Merritt alleges that in the PCRA court he asserted the exception for unknown facts.[3] He contended there, and contends here, that the newly available SEM technology will allow him to support his defense by determining the previously unknown fact whether the bullets shot at Dunbar and Baxter came from the same gun. .
The PCRA court refused to apply the statutory exception and held Merritt’s PCRA petition untimely. Commonwealth v. Monroe, Nos. 1736-39 (Phila.Co.Ct.C.P. August 12, 1997); Commonwealth v. Monroe, Super. Ct. No. 3909 Phila. 1997 (Phila. Co. Ct. C.P. April 12, 1998). The Superior Court of Pennsylvania affirmed, finding that Merritt failed to allege or prove any of the statutory exceptions to the PCRA’s time bar. Commonwealth v. Monroe, No. 3909 Phila. 1997, 748 A.2d 774 (Pa.Super.Oct. 12, 1999). Merritt does not chal *163 lenge the state court’s ruling. Rather, he contends that even if his PCRA petition was properly dismissed as untimely, it was still “properly filed” under the requirements of AEDPA. Although an untimely state petition is generally not “properly filed,” Merritt argues that an untimely application is “properly filed” if the applicant asserted a statutory exception to the statute of limitations of a state post-conviction relief statute.
As a preliminary matter, we must consider whether Merritt’s request that the District Court direct SEM analysis of the bullet evidence is moot. In response to our raising the issue, we learned at oral argument that neither Merritt nor the Commonwealth had attempted to ascertain whether the bullets at issue were even available for examination. 'We directed the Commonwealth to investigate the location and status of the bullets and report back to us. The Commonwealth notified this court by letter that the Clerk of Quarter Sessions possesses one of the bullets in question, held under property receipt number 616303. Merritt’s counsel asserted in response that the located bullet was the one removed from Dunbar. It is unknown whether the bullet removed from Baxter’s leg still exists, and it has not been located to date.
Given the uncertain status of the evidence, Merritt’s invocation of the PCRA’s statutory exception for new evidence may have been groundless. If the parties can locate only one of the bullets, a SEM analysis could not compare the two bullets as Merritt requested.[4] It is important that petitioners and counsel, as well as the Commonwealth, heed the lesson learned from our experience in this case and ascertain the existence of any allegedly new evidence before filing a petition for habeas corpus on that basis. This will avoid unnecessary and wasteful expense to the parties and the courts and ensure that viable relief is available should petitioner prevail.
Despite the above concerns, we will not deem Merritt’s habeas corpus petition moot because he raised additional, unrelated claims in his habeas petition. If we were to reach these other claims, primarily asserting ineffective assistance of counsel, they are not moot because they do not depend on the availability of the bullet evidence or a SEM analysis. Therefore, we proceed on the assumption that Merritt’s habeas corpus petition is not moot and consider whether his second PCRA petition for state post-conviction relief was “properly filed” under AEDPA.
When determining if a state petition is “properly filed,” we must focus on the “state law governing when a petition for collateral relief is properly filed.” Fahy, 240 F.3d at 243. In Fahy, we held that a PCRA petition that was dismissed by the state court as time-barred was' not “properly filed” under AEDPA. Id. at 244. Relying on the state court’s dismissal of the petitioner’s PCRA action as untimely, we held that we were bound by the Pennsylvania Supreme Court’s ruling that the “PCRA petition was not properly filed as a matter of state law.” Id.[5]
Merritt attempts to distinguish Fahy by arguing that here, unlike in Fahy, Merritt alleged in his PCRA petition that it was timely under one of the PCRA’s statutory *164 exceptions to the statute of limitations. He argues that a state petition, even if found untimely by a state court, may nevertheless be “properly filed” under 28 U.S.C. § 2244(d)(2) if the state statute provides statutory exceptions to the time limit for filing.
In order to prevail on this argument, Merritt must have alleged one of the exceptions to the PCRA’s statute of limitations in the state court. The Pennsylvania statutory exception on which Merritt seeks to rely is the one for the situation where “the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence.” 42 Pa. Cons. Stat. Ann. § 9545(b)(1)(h). In its order, the PCRA court stated that “none of the exceptions to be found in § 9545(b)(l)(i)(ii)(iii) were alleged or proven here.” Commonwealth v. Monroe, Nos. 1736-39, order at 7 (Phila.Co.Ct.C.P. August 12, 1997) (emphasis added); see also Commonwealth v. Monroe, No. 3909 Phila.1997, slip op. at 4, 748 A.2d 774 (Pa.Super.Oct. 12, 1999) (“[Merritt] has not alleged that the petition is based on facts not previously known which could not have been ascertained earlier by exercising due diligence.”).
Merritt’s second PCRA petition was filed pro se. Under Pennsylvania law, we must read a pro se PCRA petition liberally. See Commonwealth v. Murray, 481 Pa. 201, 205, 392 A.2d 317, 319 (1978) (“prison-drawn pro se PCHA petitions must be read with liberality”) (citing Commonwealth v. Fox, 448 Pa. 491, 295 A.2d 285 (1972)); Commonwealth v. Garrison, 303 Pa.Super. 555, 557, 450 A.2d 65, 66 (1982) (same). Although Merritt did not specifically cite the exception in 42 Pa. Cons.Stat. Ann. § 9545(b)(1)(h), he clearly made claims for relief in his petition based on the newly discovered evidence exception. For example, Merritt claimed he was eligible for relief because of “[t]he unavailabhity at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced.” App. at 16. He also alleged that, “[t]he use of an Electron Microscope in Ballistic Science is advanced technology that was unavailable at the time of the defendant’s trial.” App. at 20. Despite Merritt’s failure to directly address the issue of the timeliness of his petition or invoke the relevant statutory provision, he sought rehef provided by the exception and alleged facts to meet its requirements. Reading his pro se petition liberally, we conclude that he alleged a claim for rehef based on the availability of newly discovered evidence. ,
We proceed therefore to consider whether Merritt’s case can be distinguished from the Supreme Court’s discussion in Artuz and our prior holding in Fahy. In Artuz, the Supreme Court held that “an application is ‘properly filed’ when its delivery and acceptance are in compliance with the applicable laws and rules governing filings,” including “the time limits upon its delivery.” Artuz, 531 U.S. at 8, 121 S.Ct. 361. Although that language appears to be sweeping, Merritt notes that the Supreme Court expressly stated that it “express[ed] no view on the question whether the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed.” Id. at 8 n. 2, 121 S.Ct. 361. The reserved question is, of course, the issue before us.
The Court of Appeals for the Ninth Circuit has held that,
if a state’s rule governing the timely commencement of state post conviction relief petitions contains exceptions that require a state court to examine the *165 merits of a petition before it is dismissed, the petition, even if untimely, should be regarded as properly filed [under AEDPA].
Dictado v. Ducharme, 244 F.3d 724, 727-28 (9th Cir.2001)(emphasis added); see also Smith v. Ward, 209 F.3d 383, 385 (5th Cir.2000) (holding that an untimely petition for state post-conviction relief was “properly filed” because the statute’s exceptions to its timeliness requirements prevented the statute from imposing an “absolute bar to filing”).
These decisions stem from the Supreme Court’s analysis in Artuz, where it rejected the State’s argument that the presence of procedurally barred claims rendered the state application improperly filed under AEDPA. Instead, the Artuz Court held that the state application was “properly filed” because the state provisions barring claims that had been previously decided or had not been raised on direct appeal did not “set forth a condition to fifing, as opposed to a condition to obtaining relief.” 531 U.S. at 11, 121 S.Ct. 361. It was this distinction - between conditions to fifing and conditions to obtaining relief - that was the basis for the Ninth Circuit’s decision in Dictado. Although Dictado’s petition was successive, the state statute allowed a state court to consider a successive petition if it contained claims not raised in previous petitions or if it showed good cause for failure to raise the claim before. The court held that the statute governing successive state petitions is a condition to obtaining relief, not a condition to fifing and under Artuz, a successive petition is “properly filed” under AEDPA. Dictado, 244 F.3d at 727. The Dictado court also held that because the statute of limitations for state post-conviction relief was not an “absolute bar to fifing,” satisfaction of one of the statutory exceptions to the statute of limitations was a condition to obtaining relief. Dictado, 244 F.3d at 728. In essence, the Ninth Circuit reasoned that the state court’s analysis of whether a petition is timely under one of the statutory exceptions entailed an analysis of the merits of the petition. It followed that when such an exception is asserted, an untimely state petition may still be considered “properly filed” under AEDPA. Id.[6]
We need not decide whether we would find the Ninth Circuit’s analysis persuasive because we are bound by our prior holding in Fahy. We held in Fahy that an untimely PCRA petition does not toll the statute of limitations for a federal habeas corpus petition. 240 F.3d at 244. Although the petitioner in Fahy did not assert any of the PCRA’s statutory exceptions to its timeliness rule, such as the newly discovered evidence exception, we do not find that distinction dispositive. In Fahy, we noted that when applying AED-PA, “we must look to state law governing when a petition for collateral relief is properly filed” and “defer to a state’s highest court when it rules on an issue.” Id. at 243-44. Consequently, just as in Fahy, we must defer to the state court’s holding that Merritt’s PCRA petition was untimely and *166 it follows that it was not “properly filed” under AEDPA.
Our conclusion finds support in the Supreme Court’s recent holding in Carey v. Saffold, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). In Carey, the Court considered whether the “reasonable” timeliness standard of California’s state post-conviction relief statute tolled AEDPA’s statute of limitations. Under California’s unique procedure, a petitioner who sought to appeal the dismissal of a state petition must file a second, original petition in a higher state court within a reasonable period of time. The Supreme Court stated that AEDPA’s statute of limitations would not be tolled while the question of unreasonable delay was pending before the state court if the petition was ultimately found untimely. Id. at 2141. The Supreme Court did not adopt the argument Merritt makes here that a timeliness analysis involving the merits equates with a “condition to obtaining relief’ under Artuz. Instead, the Court stated:
If the California Supreme Court had clearly ruled that [petitioner’s] 4 1/2-month delay was unreasonable, that would be the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was entangled with the merits.

Id.

This language undercuts Merritt’s suggested interpretation of “properly filed.” The California statute of limitations for state post-conviction petitions at issue in Carey was not an absolute bar and required an analysis by the state court. Nonetheless, the Supreme Court stated that even when the state court considered the merits of the underlying state claim as well as its timeliness, if the petitioner’s delay in filing the state petition was ultimately found to have been unreasonable it would not toll the AEDPA statute of limitations. An untimely petition does not toll AEDPA’s statute of limitations. Carey, 122 S.Ct. at 2141.
Our reading of Carey is supported by the Seventh Circuit’s recent decision in Brooks v. Walls, 301 F.3d 839, 841 (7th Cir.2002), petition for cert. filed, No. 02-7612 (U.S. Nov. 20, 2002), stating:
Saffold tells us (ending any ambiguity left by Artuz) that to be properly filed an application for collateral review in state court must satisfy the state’s timeliness requirements. This means that decisions such as Nara v. Frank, 264 F.3d 310 (3d Cir.2001);[7] Smith v. Ward, 209 F.3d 383 (5th Cir.2000); Emerson v. Johnson, 243 F.3d 931 (5th Cir.2001), and Dictado v. Ducharme, 244 F.3d 724 (9th Cir.2001), to the extent they hold that petitions untimely under state rules nonetheless may be deemed properly filed, were wrongly decided.
Similarly, we hold that we are bound by the state court’s finding that Merritt’s second PCRA petition was untimely. Therefore, we affirm the District Court’s order holding that Merritt’s second PCRA petition was not “properly filed.”
*167 With all due respect to our dissenting colleague, even a brief reading of the above will demonstrate that it is simply wrong to state that our ruling departs from our precedent in Fahy and that we hold that a federal petition may be viewed as improperly filed regardless of the determination of the state court. As is evident from the above, nothing could be farther from the holding and language of this opinion.
The dissent’s position stems from its interpretation of the sentence in Fahy where we stated, “[h]ere the Pennsylvania Supreme Court has specifically ruled that Fahy’s petition was not properly filed as a matter of state law.” Fahy, 240 F.3d at 244. The dissent interprets that sentence to mean that the Pennsylvania Supreme Court stated in its Fahy opinion that Fahy’s PCRA petition was not “properly filed.” One searches the Pennsylvania Supreme Court’s opinion in Fahy in vain to find such language. See Commonwealth v. Fahy, 558 Pa. 313, 737 A.2d 214 (1999). The dissent does not point to any page in the opinion nor have we found any such statement in the Pennsylvania Supreme Court’s Fahy opinion. It is not reasonable to assume that the Pennsylvania court would have so stated because the language “properly filed” comes from a federal law, i.e., a provision of AEDPA, and not from Pennsylvania’s PCRA statute.
As we stated above, AEDPA provides that the one-year period of limitation shall not run during “[t]he time during which a properly filed application for State post-conviction ... review ... is pending.” 28 U.S.C. § 2244(d)(2) (emphasis added). We are not persuaded by the dissent’s contention that if “untimely” and “improperly filed” are coterminous, “Congress would have said ‘timely filed’ rather than ‘properly filed’ in § 2244(d)(2).” Dis. Op. at 173-74. The “properly filed” phrase encompasses more than timeliness. The Supreme Court stated in Artuz, “an application is ‘properly filed’ when its delivery and acceptance are in compliance with the applicable laws and rules governing filings,” including “the time limits upon its delivery.” 531 U.S. at 8, 121 S.Ct. 361.
Our opinion in Fahy holds that we must look to state law to determine whether the state petition is “properly filed.” 240 F.3d at 243. But it is federal law that sends us to the state court. We need not read that into our Fahy opinion, because the opinion so states explicitly: “Fahy is correct that in applying a federal statute we must construe its terms as a matter of federal law.... Therefore, to apply this statute [AEDPA] as a matter of federal law we must look to state law governing when a petition for collateral relief is properly filed.” Id. The Pennsylvania Supreme Court ruled that Fahy’s state petition was untimely. Commonwealth v. Fahy, 737 A.2d at 220, 224. Therefore, and with this procedural background, the Third Circuit panel stated, “the Pennsylvania Supreme Court has specifically ruled that Fahy’s PCRA petition was not properly filed as a matter of state law,” Fahy, 240 F.3d at 244, the sentence on which the dissent hinges. Had we stated, “the Pennsylvania Supreme Court has specifically ruled that Fahy’s PCRA petition was untimely as a matter of state law,” there would be nothing on which the dissent could be based. But the fact is that timeliness of the PCRA petition was the issue before the Pennsylvania Supreme Court and that was the issue that court decided. Its decision that the petition was untimely was the predicate for Fahy’s holding that the petition was not “properly filed” under AEDPA. Rather than being inconsistent with our decision in Fahy, this decision follows precisely the same path. The Pennsylvania Superior Court rejected Merritt’s contention that his PCRA petition was timely, *168 and we therefore hold that it was not “properly filed” for purposes of AEDPA.
Our difference with the dissent is more than a semantic one. The dissent includes two sentences that we believe are inconsistent with our requirement of deference to the state court’s decision. The dissent states “a state court determination that a petition was untimely filed does not lead automatically to the conclusion that it was improperly filed for the purposes of § 2244(d)(2),” Dis. Op. at 174, and again, “a state court determination that a petition is untimely does not suffice to establish as a matter of state law that it is also improperly filed.” Id. at 174. But the Supreme Court in Carey said precisely the opposite when it stated, in language quoted above, “[i]f the California Supreme Court had clearly ruled that Saffold’s 4^-month delay was ‘unreasonable,’ that would be the end of the matter ...” 122 S.Ct. at 2141. “Unreasonable” under California law is comparable to “untimely” under Pennsylvania law. Although the dissent disagrees, we read the decision as holding that if a state’s Supreme Court has determined that a petition was not timely, then we must hold that it was not “properly filed.”
Finally, the dissent’s proposed disposition is directly counter to our responsibility to give deference to the state court’s determination of the timeliness of the state PCRA petition. The dissent “would remand this case to the district court for a determination whether under Pennsylvania law Merritt’s state petition was properly filed.” Dis. Op. at 175-76. However, as we stated above, the Pennsylvania Superi- or Court (the highest Pennsylvania court to have ruled on the matter) has already expressly rejected the one ground on which Merritt claims his PCRA petition was timely, i.e., that it fell within the state exception for petitions claiming new evidence. The Pennsylvania court stated, “[w]e have reviewed these exceptions [in PCRA § 9545] in light of the allegations of the petition and conclude that none of the exceptions is applicable to this proceeding.” Commonwealth v. Monroe, No. 3909 Phila.1997, slip op. at 4, 748 A.2d 774 (Pa.Super.Oct. 12, 1999).[8] Once the Pennsylvania court has so decided, it would be an undue interference for a federal district court to decide otherwise.
It follows that nothing in the dissent causes us to revise our disposition to affirm.
D. Equitable Tolling
This court has held that the AED-PA statute of limitations is subject to the doctrine of equitable tolling. Fahy, 240 F.3d at 244. Equitable tolling is available “ ‘only when the principle of equity would make the rigid application of a limitation period unfair.’ ” Id. (quoting Miller v. New Jersey Dep’t of Corr., 145 F.3d 616, 618 (3d Cir.1998)). In Fahy, we restated the two general requirements for equitable tolling: (1) that “the petitioner has in some extraordinary way been prevented from asserting his or her rights;” and (2) that the petitioner has shown that “he or she exercised reasonable diligence in investigating and bringing [the] claims.” Id.
Merritt argues that the statute of limitations for his habeas petition should be equitably tolled, and relies on the finding of the Magistrate Judge that Merritt “acted diligently and reasonably when he filed his second PCRA petition rather than filing a habeas petition.” App. at 11 (Magis *169 trate Judge’s Report & Recommendation). The Magistrate Judge remarked that both Merritt and Fahy “filed second or successive PCRA petitions at a time when ‘Pennsylvania law was unclear on the operation of the new PCRA time limit.’ ” App. at 10 (quoting Fahy, 240 F.3d at 245) (footnotes omitted).[9]
Like the present case, Fahy dealt with the timeliness of a habeas corpus petition where the petitioner’s state post-conviction petition was dismissed in state court as untimely. We recognized that in 1997, when Fahy’s PCRA petition was filed, the newly established PCRA time limit was “unclear” and “inhibitively opaque.” Fahy, 240 F.3d at 245. Indeed, we stated that based on that uncertainty, Fahy “reasonably believed that the state petition was properly filed.” Id. at 244. However, as the Magistrate Judge recognized in this case, in Fahy we “did not hold that this lack of clarity in Pennsylvania law constituted extraordinary circumstances.” App. at 11. In fact, we stated that “[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the ‘extraordinary’ circumstances required for equitable tolling.” 240 F.3d at 244. Instead of finding extraordinary circumstances, we based our decision to apply equitable tolling in Fahy on the accepted principle that “death is different.” Id. at 244. We stated that “[i]f the limitation period is not tolled in this case, Fahy will be denied all federal review of his claims.” Id. at 245; see also Banks v. Horn, 271 F.3d 527, 534-35 (3d Cir.2001), rev’d on other grounds, Horn v. Banks, 536 U.S. 266, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002).
This case is similar to Fahy. In 1996, when Merritt filed his second pro se PCRA petition, the operation of the PCRA statute of limitations was uncertain, and it was not unreasonable (indeed it was appropriate) for Merritt to have believed he was required to exhaust his state remedies by filing a second PCRA petition prior to filing a habeas petition in federal court. Although the Magistrate Judge was aware of the comparability, she did not recommend equitable tolling for Merritt because she stated that, unlike Fahy, Merritt does not face the death penalty. The fact that Fahy was a death penalty case was the dispositive factor in that case, as we stated that, “[i]n a capital case ... the consequences of error are terminal, and we therefore pay particular attention to whether principles of ‘equity would make the rigid application of a limitation period unfair’.... ” Fahy, 240 F.3d at 245 (citation omitted). We then concluded, “[b]e~ cause the consequences are so grave and the applicable law is so confounding and unsettled, we must allow less than ‘extraordinary’ circumstances to trigger equitable tolling of the AEDPA’s statute of limitations.... ” Id. (emphasis added).
In Fahy, we clearly limited the lower bar that we established for equitable toll *170 ing to capital cases, and Merritt is not in that position. Although Merritt faces the grave penalty of mandatory life sentence without the possibility of parole, we cannot apply the rationale of Fahy to Merritt’s situation without violating our tradition of avoiding intra-circuit conflict of precedent.[10]
Nor do we see any reason under the facts of this case to decide whether to apply equitable tolling, which Merritt seeks to invoke based on the uncertainty of Pennsylvania law regarding its time bar. Pennsylvania law as to the time bar of the PCRA became clear with the decisions of the Pennsylvania Superior Court in Commonwealth v. Alcorn, 703 A.2d 1054 (Pa.Super.Ct.1997), and Commonwealth v. Conway, 706 A.2d 1243 (Pa.Super.Ct.1997). Merritt did not act promptly thereafter to file his petition for habeas corpus in federal court. Instead, he waited more than two years, filing his petition on May 5, 2000. Accordingly, we agree with the District Court that there is no basis to find Merritt’s habeas petition timely, either under the statute or under the doctrine of equitable estoppel. .
III.
CONCLUSION
Based on the foregoing analysis, we will affirm the order of the District Court, entered May 30, 2001, dismissing Merritt’s petition for a writ of habeas corpus as untimely.

. Merritt also alleged ineffective assistance of counsel based on his prior counsel's failure to examine or to request an examination of the bullets with an Electron Microscope.

. Merritt does not assert as error that the PCRA court failed to wait until the amended petition was filed.

. Merritt only argued that he required SEM testing to ascertain the fact whether both the bullet that killed Dunbar and the bullet that wounded Baxter came from the same gun. The Commonwealth has not argued before us that Merritt's argument does not fit within subsection (ii).

. In his response letter, Merritt's counsel argued that it may be possible, using the SEM technology, to compare the located bullet with pentascopic photographs taken of the bullets at trial. This assertion was given without support and is speculative.

. Although we held that Fahy was not entitled to statutory tolling, we granted him equitable tolling, primarily because it was a capital case.

. Merritt also cites Nara v. Frank, 264 F.3d 310 (3d Cir.2001), to support his claim. In Nara, we held that a petitioner's nunc pro tunc motion in state court to withdraw his earlier guilty plea was "properly filed” under AEDPA. Id. at 316. It is significant that in Nara the petitioner filed his nunc pro tunc motion (motion to withdraw his guilty plea) at what may reasonably have been considered the suggestion of the Superior Court. The PCRA court denied Nara’s nunc pro tunc motion for substantive reasons (i.e., because he gave no compelling reason why he waited 12 years to ask to withdraw his plea), rather than because of failure to comply with the state’s filing rules. Therefore, as Merritt concedes, "Nara did not decide the question presented here....” Petitioner’s Br. at 34.

. The Seventh Circuit may not have realized that, as we noted in Nara, we had been advised by the petitioner that the Pennsylvania courts had a practice to accept motions to withdraw guilty pleas nunc pro tunc, as they did Nara’s. It was only after considering Nara's motion did the Pennsylvania court deny Nara's motion because he failed to give a compelling reason why he waited 12 years to ask to withdraw his guilty plea. See Nara, 264 F.3d at 313. The Pennsylvania court's reason for denying Nara’s motion appears to have been based on the merits of the motion to withdraw the guilty plea rather than its failure to comply with the state’s time requirements for filing a PCRA petition. After Carey, Nara would be analyzed differently.

. Indeed, Fahy had also argued unsuccessfully that his PCRA petition was timely because he invoked one of the exceptions to the PCRA timeliness requirement (albeit a different exception than Merritt invoked). The Pennsylvania Supreme Court rejected Fahy's argument, and we held it was not “properly filed.”

. We note that the Magistrate Judge also stated that Merritt had not provided evidence to support his claim that he could not have learned of the existence of SEM technology before November 1996. She stated:
there is evidence in the record that SEM technology existed well before the petitioner learned of it by watching a television program in November 1996. In his memorandum of law, the petitioner cites to a chapter on SEM in a 1981 book titled Scientific and Expert Evidence. Further, the petitioner has attached a copy of Chapter 29 of this book to his memorandum of law. That chapter clearly indicates that SEM technology existed as early as 1971 and its use in forensic science was being considered in the 1970's. Thus, it is not clear that petitioner exercised due diligence in learning of the existence of SEM technology.
App. at 7 n.5.

. See 3d Cir. I.O.P. 9.1. Undoubtedly, there will be other habeas petitioners who find themselves in similar situations where their need to exhaust state remedies will create a tension with the one-year statute of limitations in AEDPA. Some of these petitioners may have simply been neglectful of their responsibility to exhaust at the outset, but others, such as those who have legitimate grounds to claim discovery of new evidence, may not have had that opportunity. The federal courts should seek ways to ameliorate the consequences for these petitioners in appropriate cases.
Thus, for example, when petitioners have filed habeas actions in federal court before they have fully exhausted their state remedies, many federal courts have suggested that the federal action should be stayed to give the petitioners an opportunity to file their state action because an outright dismissal, even if without prejudice, could jeopardize the timeliness of a collateral attack. See, e.g., Palmer v. Carlton, 276 F.3d 777 (6th Cir.2002) (approving Second Circuit approach of granting a stay with time limits upon the petitioner to bring his claims); Zarvela v. Artuz, 254 F.3d 374 (2d Cir.), cert. denied, 534 U.S. 1015, 122 S.Ct. 506, 151 L.Ed.2d 415 (2001) (holding district court should have stayed habeas petition and only dismissed unexhausted claims where complete dismissal jeopardized the timeliness of collateral attack); Calderon v. United States Dist. Court, 134 F.3d 981 (9th Cir.1998) (denying state's challenge to district court order holding habeas petition in abeyance while petitioner exhausted claims in state court); Neverson v. Bissonnette, 261 F.3d 120, 126 n. 3 (1st Cir.2001) (noting that post-AEDPA, it may be appropriate to stay a habe-as corpus petition until state remedies are exhausted); Freeman v. Page, 208 F.3d 572, 577 (7th Cir.), cert. denied, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000) (noting that dismissal of habeas corpus petition is not proper when it would jeopardize the timeliness of a collateral attack). These opinions often cite the concurrence of Justice Stevens, joined by Justice Souter, suggesting this approach in Duncan v. Walker, 533 U.S. 167, 182-83, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (a non-capital case). Because Merritt chose to file his petition in state court rather than in federal court when he had to make a choice, this procedure would be inapplicable.