NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1636
_____

DERRICK G. RAGAN
Appellant

v.

COMMISSIONER MARTIN HORN, PENNSYLVANIA DEPARTMENT OF
CORRECTIONS; DONALD T. VAUGH, SUPERINTENDENT OF THE
STATE CORRECTIONAL INSTITUTION AT GRATERFORD


_____


On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-00-cv-02092)
District Judge: Honorable Anita B. Brody
_____


Argued November 17, 2010
_____


Before: AMBRO, FISHER and GREENBERG, Circuit Judges

(Opinion filed: January 19, 2011)

Mary E. Hanssens, Esquire
Jerome H. Nickerson, Esquire
Michael Wiseman, Esquire (Argued)
Defender Association of Philadelphia
Federal Capital Habeas Corpus Unit
The Curtis Center, Suite 545 West
Independence Square West
Philadelphia, PA 19106-0000

    Counsel for Appellant

Thomas W. Dolgenos, Esquire
Helen T. Kane, Esquire (Argued)
Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107

Counsel for Appellees

_____

OPINION
_____

AMBRO, Circuit Judge

Derrick Ragan is currently serving a term of life imprisonment for a first-degree murder

conviction in 1991.[1] At the time of the homicide, Ragan was driving a car with Jerry Burden in

the passenger seat. They pulled up next to a car driven by Anthony Thomas, who had Steven

Guilford in the passenger seat. According to Guilford, the only eyewitness to testify at trial,

Ragan leaned over Burden and shot Thomas through the passenger-side window. Ragan

contends, however, that it was Burden who shot Thomas. During their investigation, detectives

interviewed another eyewitness, a bystander named Martino Crews, who initially reported that he

saw Burden get out of Ragan's car and shoot Thomas, as Ragan claims, but later told them that

he thought Ragan was the shooter. The parties dispute whether the prosecution disclosed

Crews's statements to the defense. Neither party introduced the statements or called Crews to

testify at trial.

Ragan pursued his direct and post-conviction appeals in state court to no avail. On April

21, 2000, he filed the counseled *habeas* petition that we now review. Ragan raises claims of

_____

[1] Ragan was also convicted of a second, unrelated murder in 1991, for which he was
sentenced to death. The murder conviction before us in this appeal served as the sole
aggravating factor for the death sentence he received in the second case.

actual innocence, prosecutorial misconduct, and that either the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose the Crews statements, or alternatively, if the prosecution disclosed them, that his trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to investigate and call Crews to testify.

Ragan conceded that his *habeas* petition was untimely under the one-year statute of limitations of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1)(A), but argued that equitable tolling should be granted because the attorney he first retained to file the petition misled and abandoned him. The District Court granted Ragan's new counsel 60 days to file *habeas* petitions in his capital and non-capital cases, but both petitions were filed approximately 12 days after that deadline. After an evidentiary hearing, the Court ruled that Ragan's petition was timely because his prior counsel's conduct (amounting to abandonment of his client) was an extraordinary circumstance warranting equitable tolling. Ragan filed a motion to modify the Court's order, pointing out certain errors that the Court had made in its calculations. The Court then entered an Amended Memorandum and Order on June 24, 2008 (the "Amended Order"), determining that Ragan was *not* entitled to equitable tolling because he failed to act with reasonable diligence after he learned of his prior counsel's abandonment.

Ragan filed another motion for reconsideration seeking to modify the Court's Amended Order. He argued that equitable tolling was warranted because he exercised reasonable diligence in attempting to file his *habeas* petition, and alternately that AEDPA's one-year limitations period should not apply because Crews's first statement and a subsequent statement by Guilford show him to be actually innocent. The Court rejected both arguments and denied Ragan's motion by an "Explanation and Order" entered on February 10, 2009. However, it granted a

3

certificate of appealability on the issue of whether Ragan exercised sufficient diligence to warrant equitable tolling. (Expl. & Ord. at 15).[2] In the Court's view, "reasonable jurists could disagree" because the "period of delay in this case is neither so short as to be unassailably diligent, nor so long as to be unequivocally dilatory." *Id.*

We reverse the District Court's Order and conclude that Ragan did exercise reasonable diligence under the circumstances. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We review *de novo* the District Court's legal ruling that Ragan's *habeas* petition is time-barred under AEDPA. *See, e.g.*, *Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Merritt v. Blaine,* 326 F.3d 157, 161 (3d Cir. 2003).

The District Court concluded, and Ragan does not dispute, that his *habeas* petition was not filed within the one-year AEDPA limitations period. *See* 28 U.S.C. § 2244(d)(1)(A). The issue before us is whether he should be entitled to equitable tolling. "[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006). The Supreme Court has instructed that "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' . . . not 'maximum feasible diligence.'" *Holland v. Florida*, 130 S. Ct. 2549, 2565 (2010) (internal citations omitted). Our Court has similarly held that "[d]ue diligence does not require 'the maximum feasible diligence,' but it does require reasonable diligence in the circumstances." *Schlueter v. Varner,* 384 F.3d 69, 74 (3d Cir. 2004) (internal citations omitted); *see also Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003) ("The standard is not 'extreme diligence' or 'exceptional diligence,' it is *reasonable*

---

[2] The District Court did not grant a certificate of appealability on the actual innocence issue.

4

diligence. On remand, the district court should ask: did the petitioner act as diligently as reasonably could have been expected *under the circumstances*?") (emphases in original).

The District Court never changed its determination that the attorney abandonment Ragan faced was an extraordinary circumstance for equitable tolling purposes.[3] However, it ruled in its Explanation and Order that Ragan did not act with sufficient diligence after his extraordinary circumstance was resolved. We think that Ragan did act with reasonable diligence, and we therefore reverse and remand for a hearing on the merits of Ragan's *habeas* petition.

Ragan's new Federal Defenders Capital Habeas Corpus Unit ("CHU") attorneys were reasonably diligent under the circumstances, particularly in light of the following three considerations: (1) the District Court was made aware of the reason why CHU counsel had not filed within the Court's 60-day period before that deadline had passed; (2) the Court was actively involved in the process it directed of obtaining missing state court materials required for Ragan's *habeas* filings during and after those 60 days; and (3) the Court signed an order requiring the Commonwealth to turn over missing state court materials seven days *after* its 60-day deadline (April 17, 2000). The missing materials were collected three days later (April 20, 2000), and the *habeas* petitions were filed the next day (April 21, 2000).[4]

---

[3] "Ragan was … abandoned by his attorney while he was diligently pursuing his rights. Based on the egregious acts of Ragan's attorney, I found that 'extraordinary circumstances' existed to warrant equitable tolling." (Expl. & Ord. at 2).

[4] The relevant events from February to April 2000 are as follows: On February 9, 2000, the Court granted Ragan's *in forma pauperis* motion and allocated his new CHU attorneys 60 days to file his *habeas* petitions in his capital and life cases. Fifty-seven days later, on April 6, 2000, CHU counsel wrote to the Court (copying the Commonwealth) asking the Court to convene a conference regarding "a matter that is preventing us from completing our work on Petitioner's habeas corpus filings." (A289-92). The Commonwealth had declined to provide state court records that Ragan had already sought by several other means to CHU counsel without a court order. On the 60th day—April 10, 2000—the Court issued an order that a conference be conducted four days later regarding the missing materials. At the April 14, 2000 conference, CHU counsel appeared and the Commonwealth did not. Three days later, on April 17, 2000, the

5

While the District Court did note the 60-day window it had granted petitioner's new attorneys in its Explanation and Order denying equitable tolling, it omitted any mention of the series of events described herein. Instead, without noting the intervening events that it had supervised, it stated that "Ragan carelessly disregarded the deadline and did not file his Petition until nearly two weeks later . . . ." (Expl. & Ord. at 8). This record does not reflect careless disregard. The petition was filed only one day after crucial missing state court documents were provided to Ragan's attorneys pursuant to the Court's order.

In sum, Ragan and his attorneys did not simply sit on their rights. Rather, they were actively involved in seeking—with the District Court's assistance—the documents they believed were necessary to pursue Ragan's claims adequately. As noted above, we expect only reasonable diligence for equitable tolling once extraordinary circumstances have been found. Although Ragan's *habeas* petition was filed 12 days after the Court's deadline, the reasons for the delay, the Court's involvement in managing the procurement of the missing materials, and the subsequent speed with which the petition was filed (one day after obtaining the materials), easily meet the reasonable diligence bar. Thus, we reverse the judgment to the contrary, conclude that Ragan's *habeas* petition is not time-barred, and remand for further proceedings.[5]

Court signed an order directing the Commonwealth to provide the missing materials. Three days after the Court's order (April 20), the CHU attorneys were able to collect the materials at issue. One day later (April 21), they filed Ragan's *habeas* petitions in both the life and capital cases.

[5] We note that our ruling on the reasonable diligence issue resolves whether Ragan's *habeas* petition is time-barred, but because the District Court reached a different conclusion on that issue, it dealt with Ragan's actual innocence claim that we have not addressed here. Because the Court addressed the actual innocence issue only in order to determine whether it would have been an alternative basis to defeat untimeliness under AEDPA, rather than on its merits after additional briefing and an evidentiary hearing, this issue may be raised in further proceedings on remand.