NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1493
_____

UNITED STATES OF AMERICA

v.

DION DAKOTA JOHNSON,
                                   Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 1-09-cr-00064-003
District Judge: Honorable A. Richard Caputo

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 1, 2018

Before: SMITH, *Chief Judge*, HARDIMAN and RESTREPO, *Circuit Judge*s

(Opinion Filed: May 18, 2018)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SMITH, *Chief Judge*.

Dion Dakota Johnson appeals an order denying him leave to file an out-of-time motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and dismissing his claim of ineffective assistance of counsel as untimely filed. Because we agree that the § 2255 motion was untimely filed, we will affirm the judgment of the District Court.

## I.

## A.[1]

In September 2009, Johnson pled guilty to federal charges of conspiracy to commit Hobbs Act robbery under 18 U.S.C. § 1951(a) and brandishing a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c). By judgment entered May 4, 2010, the District Court sentenced Johnson to 132 months' imprisonment. The time for filing an appeal expired fourteen days later. *See* Fed. R. App. P. 4(b)(1)(A)(i). Because no notice of appeal was filed, the judgment became final on May 19, 2010. *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999).

At Johnson's request, a copy of the District Court's docket sheet was mailed to him on October 13, 2010. Ten months later, in August 2011, Johnson contacted the District Court to request another copy of the docket sheet. Another five months after

---

[1] The facts discussed in this section are largely taken from the opinion issued when this matter was previously before the Court of Appeals, and are not in dispute. *See United States v. Johnson*, 590 F. App'x 176 (3d Cir. 2014) (hereinafter, "*Johnson I*").

2

that, on January 10, 2012, the Clerk of this Court wrote Johnson a letter informing him that he never had an appeal in this Court.

Shortly thereafter, on January 30, 2012, the District Court received a letter from Johnson stating that he had become aware that "my appeal is now late in being put forward" and seeking leave to file an untimely motion under § 2255 in order to present a claim of ineffective assistance based on counsel's failure to file a direct appeal. After Johnson and the Government briefed the issue, the District Court denied Johnson leave to file an untimely § 2255 motion. Johnson filed a pro se appeal.

This Court granted a certificate of appealability and appointed counsel. Ultimately, on October 22, 2014, the panel issued a memorandum opinion and order concluding that resolution of Johnson's claim required additional factual development. *Johnson I*, 590 F. App'x 176. This Court vacated the District Court's order and remanded the matter for further proceedings.

B.

On remand, the District Court conducted an evidentiary hearing at which Johnson, Ashleigh Zupanovic (Johnson's ex-girlfriend), and Rex Bickley (Johnson's trial attorney) testified. The hearing addressed: (1) whether or not Johnson directed Bickley to file an appeal on his behalf; and (2) whether or not Johnson could have reasonably been expected to learn before January 2012 that no appeal had been filed.

Johnson testified that, immediately after the sentence was imposed and before he left the courtroom (*i.e.*, on April 23, 2010), he directed Bickley to file an appeal. JA 794. And, just after sentencing, Johnson wrote to his then-girlfriend, Zupanovic, and asked her

3

to call Bickley for him. JA 796. Zupanovic similarly testified that, about a week after Johnson was sentenced, she received a letter from Johnson asking her to call Bickley about filing an appeal. JA 836. She stated that she called Bickley several times and left at least one message, but never heard back from him. JA 833.

According to Johnson, Bickley then phoned him about a week and a half after sentencing. JA 796. During that conversation, Bickley allegedly told him, "he has to look over my P.S.I. to make sure everything was correct. He had to look at the court transcripts to make sure everything was correct before he filed my appeal, but he will do it and once he did it he would notify me." JA 794. Johnson acknowledged that he never contacted Bickley about an appeal in the months that followed. JA 795.

As to his eventual discovery that no appeal had been filed, Johnson testified that he requested a copy of his District Court docket sheet in October 2010 "to look over to see if I can find anything that my attorney at the time was supposed to be looking for and supposedly filing my appeal at the time like he was supposed to. I was looking for certain information that could possibly help me help him or see what was going on in my case at all." JA 788. He ordered a second copy of the docket sheet in August 2011 for the same reason, because the earlier copy was lost when he transferred prisons. JA 789. Although the dockets did not reflect that an appeal had been filed, Johnson testified that he "wasn't aware it was supposed to be on the docket sheet." JA 824. Johnson testified that he first learned that no appeal had been filed in January 2012, when he received the letter from the Court of Appeals specifically saying so. JA 798.

4

Johnson also testified to a personal history of serious mental illness throughout his life, including suicide attempts and auditory hallucinations. JA 762–65, 770–72. He testified that, during his incarceration, he was unable to think clearly until he began taking a new medication in December 2011. JA 825–26. Voluminous medical records concerning Johnson's mental illness also were submitted. JA 188–719. Johnson further testified that he spent periods of his incarceration in segregation, although he did not specify how often or for how long. JA 796.

Attorney Bickley testified to a different version of the relevant events. Bickley, who has been an attorney for 40 years, JA 841, testified that, although he did not specifically recall the details about his interaction with Johnson after sentencing, it is his practice to meet with his clients directly after sentencing. JA 860–61. He testified to a recollection that, from the date of sentencing, Johnson's case was essentially over. JA 861. He stated that he would remember if there had been a request to file an appeal at that time, as such a request would create a whole set of duties and obligations on his part. JA 861. With regard to Johnson's mental health, Bickley testified that, at the time of sentencing, he did not have any concerns about Johnson's ability to understand the proceeding and assist in his defense. JA 859–60. He did not recall anything unusual in regard to Johnson's mental health or in his ability to understand what was going on. JA 868.

The District Court considered the evidence presented, although it declined to resolve the factual dispute over whether or not Johnson directed Bickley to file an appeal. The District Court instead found that Johnson did not timely file his motion under §

5

2255(f)(4) because he failed to act with reasonable diligence under the circumstances, nor did he demonstrate that the statute of limitations should be equitably tolled. JA 9. Accordingly, the District Court denied Johnson leave to file a § 2255 motion out of time, dismissed the claim of ineffective assistance of counsel as time-barred, and granted a certificate of appealability on the timeliness issue.[2]  This timely appeal followed.

II.[3]

A one-year period of limitation applies to a motion under § 2255. 28 U.S.C. § 2255(f). For present purposes, the year-long period begins to run from the latest of either (a) the date on which the judgment of conviction became final (here, May 19, 2010), or (b) the date on which the facts supporting the claim presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f)(1), (4). In addition, under appropriate circumstances, the running of the one-year limitation period may be subject to equitable tolling. *See Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 619 n.1 (3d Cir. 1998).

---

[2] The District Court also denied a § 2255 claim under *Johnson v. United States*, 135 S. Ct. 2551 (2015), for lack of merit. Although Johnson sought leave to expand the certificate of appealability to address the denial of his *Johnson* claim on appeal, a panel of this Court denied Johnson's request. Accordingly, the District Court's disposition of the *Johnson* claim will not be addressed in this opinion.

[3] The District Court had jurisdiction over the criminal proceeding pursuant to 18 U.S.C. § 3231 and jurisdiction over the motion to set aside, vacate, or correct the sentence pursuant to 28 U.S.C. § 2255(a). We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We conduct a plenary review of the District Court's decision to dismiss the petition as untimely. *See Merritt v. Blaine*, 326 F.3d 157, 161 (3d Cir. 2003) (citing *Nara v. Frank*, 264 F.3d 310, 314 (3d Cir. 2001)).

6

Johnson's initial pro se request to file an untimely § 2255 motion was postmarked January 24, 2012, and so was mailed about eight months *after* a year from the date on which the conviction became final (*i.e.*, May 19, 2011).[4]  Johnson was therefore untimely in his efforts to pursue § 2255 relief unless he can demonstrate that he was entitled to file after May 19, 2011 either because the facts underlying the claim were not discoverable earlier through the exercise of reasonable diligence, 28 U.S.C. § 2255(f)(4), or because a substantial period of equitable tolling applies.

## A.

Johnson first argues that his motion was timely filed under § 2255(f)(4) because a person in his circumstances exercising reasonable diligence could not have discovered earlier than he did (*i.e.,* upon receiving the Clerk's letter in January 2012) that no appeal had been filed.  Thus, he contends that the date on which he acquired *actual* knowledge that no appeal was filed is the same date on which a person in his circumstances acting with reasonable diligence could have discovered that fact.  Because the inquiry into when a factual predicate could have been discovered with due diligence is a question of fact, we review the District Court's determination for clear error.  *See Wilson v. Beard*, 426 F.3d 653, 660 (3d Cir. 2005).  The District Court did not clearly err here.

At his guilty plea colloquy in September 2009, Johnson testified that he was thinking clearly and that he understood the proceedings.  JA 723, 726.  At sentencing in

---

[4] Although Johnson contacted the District Court in October 2010 and August 2011 to obtain copies of his docket sheet, Johnson does not contend that those earlier contacts should be treated as an effort to file a § 2255 motion.

April 2010, the District Court advised Johnson of the time for appealing, JA 755, and Johnson apparently took heed of this, as he testified that he spoke to Bickley and Zupanovic during the week after sentencing about his wish to appeal. Yet this flurry of alleged initial activity was followed by a lengthy period from April 2010 until January 2012, during which it is undisputed that neither Johnson nor his girlfriend took any further action to determine whether an appeal had been filed.

The District Court was persuaded that a reasonable person in Johnson's circumstances could have discovered during that time that no appeal had been filed. It found that Johnson's requests for copies of the docket sheet—the first of which was made in October 2010, only five months after his conviction became final—demonstrated that "Petitioner was lucid, able to communicate with outside parties, and had questions about his case at that time." JA 13–14. In addition, the District Court found that, although Johnson testified that he never attempted to correspond with Bickley about his appeal, Johnson did correspond with Bickley about other matters. JA 14. Johnson fails to convince us that these findings are clearly erroneous.

Johnson responds that his mental illness prevented him from inquiring further for the entire period. But, while the District Court accepted Johnson's well-documented claim that he suffers from serious mental illness, the District Court expressed some doubt about the credibility of Johnson's claim that taking a new medication in December 2011 was the specific triggering event that provided him with clarity to begin investigating the status of his appeal. For instance, Johnson's proposed § 2255 motion attributed his allegedly newfound clarity to being *off* medication, not to being on a new medication. JA

8

100 (arguing that "he is now off of his mental health medication and capable of thinking clearly"). And, Johnson submitted medical records that show that, almost immediately after being prescribed the new medication in December 2011, he began hiding the pills rather than swallowing them.[5] *See* JA 504 (46 pills of the type prescribed in December 2011 found in Johnson's cell on February 1, 2012).

In any event, the fact of, or absence of, an appeal is an easily discoverable matter of public record. Johnson was in communication with his counsel during his incarceration, and was in contact with the courts for the specific reason of preparing for an appeal. Even given his mental illness, there is ample reason to believe that more prompt action on Johnson's part could have revealed counsel's failure to file an appeal far sooner than January 2012.

### B.

Alternatively, Johnson offers a second proposed "trigger date" for the running of the § 2255(f)(4) limitations period based on the "well-known lag between the filing of an appeal and its resolution," a time-frame he argues is about ten months according to national statistics. He contends that Bickley's alleged statement just after sentencing to the effect that the appeal process is a lengthy one would cause a reasonable litigant to

---

[5] Johnson does not argue in his brief that being *off* medication was the triggering event. Indeed, he acknowledges that there were several earlier periods during his incarceration when he was not medicated, none of which is alleged to have brought "clarity" to inquire about his appeal. *See* Johnson Br. 7–8 (arguing that treatment with antidepressant and antipsychotic medication was "abruptly discontinued" for a month in summer 2010), 9 (noting that medication was discontinued for "noncompliance" in September 2010 and that new medication was prescribed in December 2010).

wait the full length of time for the expected resolution of an appeal before further inquiring about the appeal's status. He thus calculates that the one-year period should begin to run in February 2011, ten months after his alleged April 2010 request that Bickley file an appeal. If we were to accept this argument, the January 2012 effort to file a § 2255 motion would be timely.

We cannot agree with the proposition that an individual acting with reasonable diligence would request that an appeal be filed and then wait the full anticipated amount of time for a decision to be rendered before making any inquiry about the status of the appeal, based on a single vague comment from counsel that appeals take a long time. A reasonable litigant would likely follow up with counsel or the court to clarify *how long* he should expect to wait.[6] Had he followed up, Johnson could have learned much sooner that no appeal was filed, or, if counsel had actively misled him about the filing of an appeal or had given him some specific information about how long to wait before following up, it might strengthen his claim that the lengthy period of inaction was based upon some reasonable expectation. But Johnson does not claim that this happened.

Moreover, Johnson's argument assumes it would be reasonable for a litigant to expect nothing to happen between the filing of a notice of appeal and the Court's resolution of that appeal. We cannot accept that assumption. A reasonable litigant would expect to participate in some manner in the preparation of an appellate brief during an

---

[6] It seems to us that a reasonable litigant would be far more likely to follow up with additional questions to counsel about the typical length of the appeal process than to independently conduct statistical research to determine the average time for case resolution.

appeal's pendency. Indeed, Johnson expressed an expectation that he would help prepare the appeal brief, as he testified that he made the October 2010 and August 2011 requests for docket sheet copies for the purpose of helping his attorney find information for an appeal. JA 788–89. Accordingly, we are not persuaded that inaction for the ten-month period that an appeal allegedly normally takes to be resolved reflects reasonable diligence.

## C.

Finally, Johnson argues that the one-year limitation period is subject to equitable tolling because extraordinary circumstances prevented him from filing his § 2255 motion sooner than January 2012. Equitable tolling applies when "principles of equity would make the rigid application of a limitation period unfair." *Miller*, 145 F.3d at 618. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Pabon v. Mahanoy*, 654 F.3d 385, 401–02 (3d Cir. 2011). Its application is highly fact-specific, and courts must be sparing in its use. *Id.* at 399.

Johnson argues that his mental illness, his placement in restricted housing, and his attorney's statement to him that an appeal would be filed together gave rise to extraordinary circumstances warranting equitable tolling, and the impediment to his filing earlier only abated when he was prescribed new medication in December 2011. *See* Johnson Br. 25. Mental incompetence is not a *per se* reason to toll the statute of limitations, but tolling may be appropriate if there is evidence that an individual's mental

11

status prevented him from asserting his rights. *See Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001), *overruled in part by Carey v. Saffold*, 536 U.S. 214 (2002).

While Johnson argues generally that he "lacked the clarity of thought necessary to recognize the need to file a § 2255 motion," Johnson Br. 27, Johnson did not put forth any particular evidence to show that his mental illness prevented him from asserting his rights. Similarly, although Johnson also relies on his stays in restricted housing to support his equitable tolling claim, he did not put forth any evidence of the amount of time he spent in restricted housing or the impact that it had on his ability to communicate with counsel or the courts. Considering the totality of the circumstances, we agree with the District Court's conclusion that Johnson failed to establish that he was prevented from managing his affairs or understanding his appeal rights until January 2012. *See* JA 18.

Moreover, even if Johnson had established that he faced extraordinary circumstances, for the reasons already discussed, Johnson failed to show that he acted with reasonable diligence in light of those circumstances. As the District Court observed, Johnson's failure to contact his attorney or the court about an appeal at any time after the first week and a half from sentencing simply was not reasonable. JA 16.

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.

12