The judgment of the bankruptcy court is affirmed.

**Martha JEWETT**

v.

**INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION,**
**Appellant.**

**No. 80–2371.**

United States Court of Appeals,
Third Circuit.

Argued April 21, 1981.

Decided June 8, 1981.

As Amended June 11, 1981.

---

Joyce M. Usiskin (argued), Princeton, N. J., for appellee.

Thomas L. Morrissey (argued), Rosemary A. Hall, Carpenter, Bennett & Morrissey, Newark, N. J., for International Telephone and Telegraph Corp.

Before SEITZ, Chief Judge, and ALDISERT and GIBBONS, Circuit Judges.

OPINION OF THE COURT

GIBBONS, Circuit Judge.

International Telephone & Telegraph Corp. (IT&T) appeals from a final judgment awarding to an employee, Martha Jewett, a promotion, $16,307 in back pay, and $31,194.79 in attorneys fees and expenses in her action charging sex discrimination in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* We reverse.

Jewett filed a charge of discrimination with the Equal Employment Opportunities Commission (EEOC) on November 11, 1974. The EEOC issued a notice of right to sue on February 3, 1976, and this action was commenced on April 26, 1976. Since timely filing is a prerequisite to the maintenance of a Title VII action,[1] Jewett must establish that she was subject to unlawful discrimination within 180 days prior to November 11, 1974. She contends that she did so in two ways: (1) by showing that within the relevant 180 days she was denied promotion to a position she sought, for which she was qualified, and to which a less qualified male was appointed;[2] and (2) by showing that a pattern or practice of intentional sex discrimination which disadvantaged her in opportunities for training prior to the rele-

---

[1]. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974).

[2]. *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

vant 180 days continued to disadvantage her in promotion during that period.[3]

The case was tried to the court without a jury, and in the findings of fact dictated from the bench no mention is made of a specific promotion denied her for which she applied and was qualified within the relevant period. Jewett urges, nevertheless, that there is such evidence. On July 8, 1974 she wrote a memorandum to the President of the IT&T division which employed her seeking a promotion, and on August 28, 1974 he interviewed her. About that time the positions of Supervisor of Employee Relations and Manager of Employment became available and were filled by a male, John McMahon. Jewett was a personnel assistant, and a high school graduate with no college training, then employed at IT&T grade 9. McMahon was a grade 16 employee with an Associate Degree in electronics. There is no evidence from which the court could have found that Jewett's qualifications equalled McMahon's. That undoubtedly explains why the district court made no finding of a specific incident of discrimination within the statutory period. At oral argument Jewett's attorney conceded that aside from the McMahon promotion she could point to no specific incident of discrimination within 180 days of November 11, 1974. That incident does not meet the tests for a prima facie case of disparate treatment since, although Jewett may have been qualified for the positions filled by McMahon, he had superior qualifications.

Rather than focus on a specific incident of discrimination, however, the district court appears to have premised liability on the existence of a systemwide continuing violation. We may assume that the continuing violation theory is available to remedy employment practices and policies, not oth-

erwise sheltered by law,[4] which operate to deny present employees transfer or promotion on the basis of sex, where the practice or policy accounting for the denial remains in effect within 180 days of the charge. *See Shehadeh v. Chesapeake & Potomac Telephone Co.*, 595 F.2d 711 (D.C.Cir.1978); *Patterson v. American Tobacco Co.*, 586 F.2d 300 (8th Cir. 1978); *Clark v. Olinkraft, Inc.*, 556 F.2d 1219 (5th Cir. 1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1251, 55 L.Ed.2d 772 (1978); *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *see generally*, Sullivan, Zimmer & Richards, *Federal Statutory Law of Employment Discrimination* § 3.5 at 276–83 (1980). Suits may be brought by victims of one or more discriminatory acts occurring before the limitations period, so long as the plaintiff establishes that the offending practice is an ongoing one. *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757 (9th Cir. 1980); *Clark v. Olinkraft, Inc., supra.*[5] Such a case differs from *United Airlines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), relied on by defendant IT&T. *Evans* dealt with a discrete one-time violation (a discriminatory discharge) which only had continuing effects, rather than with a pattern and practice of discrimination which continually, often imperceptibly, operates to hold women employees in lower echelons without making itself readily apparent.

To prevail on a continuing violation theory, however, the plaintiff must show more than the occurrence of isolated or sporadic acts of intentional discrimination. The preponderance of the evidence must establish that some form of intentional discrimination against the class of which plaintiff was a member was the company's

---

**3.** *See Kunda v. Muhlenberg College*, 621 F.2d 532, 546 (3d Cir. 1980); *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757 (9th Cir. 1980); *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

**4.** *Cf. United Airlines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) (impact within statutory period of bona fide se-

niority system exempt from Title VII by virtue of section 703(h), 42 U.S.C. § 2000e–2(h)).

**5.** The time of filing would, of course, mark the time for computing the two-year limitation on backpay, and it might even prevent the award of any monetary relief if an absence of job openings during those years were shown. *See* Sullivan, Zimmer & Richards, *supra*, at 280.

"standard operating procedure." *Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977). There is a substantial question whether the pretrial order (36a), which incorporates Jewett's factual contentions (47–49a), actually presented for trial a charge of pattern or practice of intentional sex discrimination, and there are some indications in the record that during the trial the court assumed such a case was not being presented (83a). Nevertheless, since a discriminatory pattern or practice amounting to a continuing violation affecting Jewett in the statutory period was cited by the district court in support of its judgment, we turn to the evidence on which the trial court relied.

That evidence related to the 1971 appointment of Thomas Kielty as Manager of Compensation. Although plaintiff did not regard herself as being qualified for that position, the court found that when Kielty was brought in from outside and became her supervisor at age 28, it catalyzed or triggered in the plaintiff a growing resentment, since she had by then accumulated nearly 30 years of service to IT&T and had made frequent requests for greater responsibility. The court traced the genesis of this lawsuit to the ensuing personality clash between the plaintiff and Kielty, which peaked in summer 1973, when Kielty made her the only employee under his supervision not to get a raise. She became very interested in women's rights and asked permission to take a seminar on the subject at company expense, which was denied. The court's account of these events makes clear that the 1971 promotion of Kielty was identified, not as an act of sex discrimination, but instead as a triggering event for Jewett's dissatisfaction. Subsequently, not getting the kind of pay raises she thought she deserved no doubt increased this dissat-

isfaction, but alone it does not support a legitimate inference that Jewett's lack of progress was due to a pattern or practice of sex discrimination.

However, the court then concluded:

There is no doubt in my mind that the plaintiff in this case would have gone much farther in this company had she been a man with the same talent, the same dedication. There would have been no need for this woman to have applied for a specific position. (471–2a)

We construe this language to be a finding by the district court that at some time in the past IT&T had a pattern or practice of selecting rank and file men, but not women, for promotion without the necessity for applying to a specific position.

There are several difficulties with reliance on that finding as support for the judgment. First, while there is evidence from which the court could find that men were selected for promotion without the need for applying for a specific position, no evidence is referred to, and we have found none, which would support the conclusion that as a matter of general practice women were not. Thus there was no prima facie case of a pattern or practice of sex discrimination in the respect relied upon. Second, the court did not expressly find that such a pattern or practice, assuming one existed, was still ongoing; if anything, the court implied that whatever discriminatory pattern or practice may have existed had ended long before the actionable period. Nor did the court find, nor on this record could it find, that IT&T's prior failure to select Jewett for promotion to jobs for which she had not applied disadvantaged her in promotion during the actionable period by the action of any rules of eligibility operative during that period.[6]

6. *Cf. Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Under *Griggs* an otherwise neutral promotion requirement or selection device which currently perpetuates the effects of past discrimination by its disproportionate impact on the victims of such discrimination gives rise to a continuing violation which arguably may be challenged by any present employee, since the existence of such a system deters that employee from enjoying her full Title VII rights and threatens to adversely affect her in the future. *Patterson v. American Tobacco Co., supra*, 586 F.2d at 304; *Stallings v. Container Corp. of America*, 75 F.R.D. 511 (D.Del.1977); *see also United Airlines, Inc. v. Evans, supra*, 431 U.S. at 558 n.10, 97 S.Ct. at 1889 n.10; Schlei & Grossman,

The only finding that the court made about "spill over" within the statutory period was that the plaintiff was difficult and irascible during the actionable period and that those difficulties were largely caused "by her perceived, correctly perceived, notion that she had been treated unfairly." (437a). Thus the critical finding supporting the judgment below is that because of a prior pattern or practice at IT&T's Kearny Works of promoting rank and file men to positions for which they had not applied, while not doing the same for women, Jewett developed a personality disorder which operated to her disadvantage in the actionable period. However, Jewett's difficulty and irascibility during the operative period cannot, alone, support a finding that there is a continuing violation of Title VII. On this record, it would at best be evidence that the effects of a past violation continue, not that the violation itself continues. Moreover, even if we were to assume that the violation continued, there is no evidence of any causal relationship between the pattern or practice relied upon and the personality disorder referred to. Thus in two respects, both critical to support of the judgment on a continuing violation theory, the court's findings of fact are unsupportable.

Since there is no evidence showing either an instance of disparate treatment within 180 days of filing, or a pattern and practice of discrimination extending into the statutory 180-day period, IT&T was entitled to a judgment in its favor as a matter of law. That being so there is no occasion to consider other assignments of error relied upon by the appellant.[7] The judgment appealed from will be reversed.

---

*Employment Discrimination Law* 234 (Supp. 1979).

**7.** These include the contentions that the court improperly relied upon a consent decree to which IT&T is a party in another action, and that it improperly considered a post-charge promotion of Jewett as evidence of job availability and failure to promote in the actionable period.