

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-17-2006

# Satterfield v. Johnson

Precedential or Non-Precedential: Precedential

Docket No. 04-3108

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Satterfield v. Johnson" (2006). *2006 Decisions*. Paper 1676.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1676

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-3108

_____

PAUL SATTERFIELD,

Appellee,

v.

PHILIP L. JOHNSON; THE DISTRICT ATTORNEY OF
THE COUNTY OF PHILADELPHIA; THE ATTORNEY
GENERAL OF THE STATE OF PENNSYLVANIA,

Appellants

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania,
(D.C. Civ. No. 02-CV-00448)
District Judge: Honorable Jan E. DuBois

_____

Submitted Under Third Circuit LAR 34.1(a)
(September 30, 2005)

Before: ALITO and AMBRO, <u>Circuit</u> <u>Judges</u>,
RESTANI[*], <u>Judge</u>

(Filed January 17, 2006)

PAUL SATTERFIELD
Fayette State Correctional Institute
P.O. Box 9999
LaBelle, Pennsylvania 15450

     <u>Pro</u> <u>Se</u>

J. HUNTER BENNETT, ESQUIRE
Office of the District Attorney
1421 Arch Street
Philadelphia, Pennsylvania 19102

     Attorney for the Appellants

_____

OPINION OF THE COURT

_____

RESTANI, <u>Judge</u>

     This appeal arises out of a petition for post-conviction review of a state-court conviction for first-degree murder and

_____

[*] Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

2

possession of an instrument of crime entered against Paul Satterfield in 1985. Appellee, Satterfield, was granted a writ of habeas corpus by Judge Jan E. DuBois of the Eastern District of Pennsylvania on the basis of ineffective assistance of counsel arising from trial counsel's failure to call potentially exculpatory eye-witnesses at trial. Appellants Philip L. Johnson, the District Attorney for Philadelphia County, and the Attorney General of the Commonwealth of Pennsylvania ("The Commonwealth"), challenge the District Court's ruling on ineffective assistance of counsel and also argue that Satterfield's federal habeas petition should have been dismissed as time-barred under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). We agree that Satterfield's petition is time-barred and reverse the judgment of the District Court.

## I.  FACTUAL BACKGROUND

In April 1983, Satterfield, a repairman, was called to the house of William Bryant to repair a television set. After receiving partial payment, Satterfield attempted but failed to fix Bryant's television set, returning several times without success. Eventually, Bryant demanded a refund of his fee, threatening Satterfield with a baseball bat. Satterfield returned the fee and left.

On April 28, 1983, at about 3:30 in the morning, Bryant was shot to death outside his home. Immediately after the shooting, the police spoke with two eyewitnesses, Eric and

3

Grady Freeman. Eric Freeman described the shooter as a blonde-haired white male, about five-feet-nine-inches tall, driving a blue station wagon. Grady Freeman described the shooter as a "light-skin guy," about five-feet-eight-inches tall, driving a dark station wagon, but did not specify his hair color or ethnicity. Satterfield is a brown-haired African-American. At that time, the police obtained a warrant to search Satterfield's home, but were unable to obtain sufficient evidence to make an arrest.

In 1984, Satterfield made the acquaintance of Patricia Edwards and her husband, Wayne. Mr. Edwards testified at trial that on May 2, 1984, during a conversation after playing tennis, Satterfield confessed that he murdered Bryant, that he had done so because Bryant threatened him, and that he had disposed of his .44 caliber gun after the murder. That day, Edwards contacted his attorney, who contacted the police on his behalf to report Satterfield's admission. Satterfield contended at trial that Edwards fabricated his confession to punish Satterfield for his alleged romantic advances towards Edwards's wife.

Satterfield's defense consisted of impeaching Edwards's testimony as biased and arguing that a different shooter committed the crime. Defense counsel entered the warrant describing Eric Freeman's police report into the record, but neither Eric nor Grady Freeman testified to their recollection of the crime. Defense counsel declined to call these witnesses out of concern that the perhaps helpful effect of the witnesses'

4

police statements would be undermined. Counsel's belief was based, at least in part, on the fact that Eric Freeman had identified the shooter as a white male while his brother Grady had identified the shooter as a "light-skin guy," which to counsel meant a light-skinned African-American.

On June 10, 1985, Satterfield was convicted on both counts and sentenced to life in prison.

## II. PROCEDURAL HISTORY

The Superior Court affirmed judgment against Satterfield on July 22, 1987. The Pennsylvania Supreme Court denied allocatur on January 27, 1988. On April 1, 1996, Satterfield, acting pro se, filed a petition with the Pennsylvania Supreme Court, entitled "Petition for Writ of Habeas Corpus Ad Subjiciendum – Inter Alia – King's Bench Matter" ("King's Bench Petition"), which was denied on June 7, 1996. On October 11, 1996, the Pennsylvania Supreme Court denied Satterfield's motion to reconsider dismissal of his King's Bench Petition.[2] On January 13, 1997, Satterfield filed a petition for relief pursuant to the Pennsylvania Post Conviction Relief Act

---

[2] The Pennsylvania Supreme Court denied the Petition without opinion. We accept as true the uncontested denial date of October 11, 1996. See Satterfield v. Johnson, 218 F. Supp. 2d 715, 716 (E.D. Pa. 2002) [hereinafter Satterfield I].

("PCRA"), 42 Pa. Cons. Stat. § 9541.[3] The PCRA Court denied Satterfield's PCRA petition on September 21, 1998, which the Superior Court affirmed August 22, 2000. The Pennsylvania Supreme Court denied allocatur on April 30, 2001.

On January 23, 2002, Satterfield filed the pro se Petition for Writ of Habeas Corpus that is before us. Magistrate Judge Scuderi initially dismissed the petition as time-barred, but, on September 6, 2002, Judge DuBois remanded for additional consideration of statutory tolling. Judge Dubois ruled that Satterfield's King's Bench Petition was "properly filed" for purposes of tolling the statute of limitations in federal habeas cases under AEDPA, 28 U.S.C. § 2244(d)(2). Satterfield I, 218 F. Supp. 2d at 723.

On May 16, 2003, Magistrate Judge Scuderi issued a Supplemental Report and Recommendation ("Supplemental

---

[3] United States Magistrate Judge Peter B. Scuderi initially found that Satterfield's PCRA petition was filed on January 16, 1997. Magistrate Judge Scuderi, in his Supplemental Report and Recommendation, later found that Satterfield's PCRA petition was in fact dated January 9 and filed January 13, 1997, the day Satterfield now alleges he delivered his petition to prison officials for filing. Pennsylvania deems the date a prisoner delivers a pro se petition to prison authorities to be the date of filing under the prison "mailbox rule." Commonwealth v. Jones, 700 A.2d 423, 426 (Pa. 1997).

Report") recommending that Satterfield's claims be denied on their merits. When Satterfield filed no objections, on July 16, 2003, Judge DuBois issued an order adopting the report. See Satterfield v. Johnson, 322 F. Supp. 2d 613, 617 (E.D. Pa. 2004) [hereinafter Satterfield II].

On July 25, 2003, Satterfield filed objections to the Supplemental Report, requesting the opportunity to file out of time, which Judge Dubois eventually granted.[4] On June 21, 2004, Judge DuBois vacated the report and order issued July 16, 2003, holding that Satterfield's defense counsel had been ineffective for failing to interview and call Eric and Grady Freeman, and vacated Satterfield's sentence. Satterfield's remaining claims of actual innocence and absence of notice of charges against him were denied. The mandate was stayed for 180 days to permit Pennsylvania to retry Satterfield. Id. at 616–17.

Both Satterfield and the Commonwealth filed timely notices of appeal from the court's order.

## III. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review the District Court's grant

---

[4]Judge DuBois initially treated this petition as a motion for reconsideration, but vacated that order, treating it instead as objections filed out of time to the Supplemental Report.

of a writ of habeas corpus under 28 U.S.C. § 2253(a). We exercise plenary review over issues related to statutes of limitations. Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003). Where the District Court relies entirely on the state court record and does not hold an evidentiary hearing, our review of the District Court's decision is also plenary. Lewis v. Johnson, 359 F.3d 646, 652–53 (3d Cir. 2004).

## IV. DISCUSSION

### A. THE COMMONWEALTH DID NOT WAIVE THE RIGHT TO ASSERT THAT SATTERFIELD'S FEDERAL HABEAS PETITION IS TIME-BARRED

Satterfield argues that the Commonwealth has failed to appeal the portion of the District Court's order holding that Satterfield's federal habeas petition was not time-barred under AEDPA, and that therefore the Commonwealth has waived any right to assert that his federal habeas petition is time-barred under Federal Rules of Appellate Procedure 3(c)(1)(B) and 4(a)(1)(A). (Appellee's Br. 21.)[5] The Commonwealth's Notice

---

[5]The Commonwealth's Notice of Appeal states that:

> Notice is given that [the Commonwealth]. . . hereby appeal[s] to the United States Court of Appeals for the Third Circuit, from that portion of the Order of the Honorable Jan E. DuBois,

8

of Appeal does not mention any appeal from the portion of the June 21, 2004 order adopting Magistrate Judge Scuderi's Supplemental Report (which held, pursuant to the District Court's remand order of September 6, 2002, that Satterfield's King's Bench Petition was properly filed and therefore tolled under AEDPA's statutory tolling provisions).  See 28 U.S.C. § 2244(d)(2).

Had the Commonwealth filed a notice of appeal from the entire order granting collateral relief, the appeal of that final judgment would have "draw[n] into question all prior non-final orders and rulings."  MCI Telecommunications Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1092 (3d Cir. 1995) (quoting Drinkwater v. Union Carbide Corp., 904 F.2d 853, 858 (3d Cir. 1990)).  The Commonwealth's notice only identified the portion of the District Court's order dealing with ineffective assistance of counsel.  Thus, the question is not whether an appeal from a final order implicates all prior non-final orders, but whether an appeal from a portion of a final order determining the merits of

---

granting the Petition for Writ of Habeas Corpus with respect to petitioner's claim that trial counsel was ineffective for failing to call Eric Freeman and Grady Freeman as witnesses at trial and vacating petitioner's conviction, entered in this case on the 23rd day of June, 2004. (Appellants' Addendum to App. at AA.11.)

9

a federal habeas petition implies an appeal from another portion of that same final order dealing with time-bar under AEDPA.[6]

We interpret the notice requirements of Rules 3 and 4 liberally, exercising appellate jurisdiction over orders not specified in a notice of appeal if: "(1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." Polonski v. Trump Taj Mahal Assocs., 137 F.3d 139, 144 (3d Cir. 1998).

The District Court's order adopting the magistrate judge's Supplemental Report regarding statutory tolling was related to the claim for ineffective assistance of counsel because the ineffective assistance of counsel claim could not be reached without disposing of the issue of timeliness. See id. (treating notice of appeal specifying summary judgment order as including appeal of separate order granting attorney's fees); Drinkwater, 904 F.2d at 858 (notice of appeal designating portions of a summary judgment order on sex discrimination claim treated as related to prior order dismissing retaliation count of same complaint).

---

[6]The issue of timeliness under AEDPA is not jurisdictional; thus the court is not required to raise the issue if waived by one of the parties. United States v. Bendolph, 409 F.3d 155, 164–165 (3d Cir. 2005).

10

The Commonwealth's intention to appeal the issue of timeliness was "clearly manifest" from its first brief. The Commonwealth's brief, filed February 7, 2004, devotes thirteen pages to arguing the District Court's ruling on statutory tolling. (Appellants' Br. 14–27.) There is no evidence that the Commonwealth's failure to include its objection to statutory tolling prejudiced Satterfield. He had ample time to prepare a response on the issue of statutory tolling, although he declined to address statutory tolling and argued only the question of equitable tolling in his brief. (Appellee's Br. 21.) Cf. United States v. Bendolph, 409 F.3d at 169 (holding that one-month notice for habeas corpus petitioner to prepare brief on issue of timeliness raised sua sponte is sufficient to avoid prejudice).

**B.    SATTERFIELD IS NOT ENTITLED TO STATUTORY TOLLING**

AEDPA imposes a one-year statute of limitations on all federal habeas claims, subject to tolling for the time a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). The one-year statute of limitations on Satterfield's federal habeas petition began to run on AEDPA's effective date, April 24, 1996. Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998). Satterfield filed his King's Bench Petition prior to AEDPA's effective date, on April 1, 1996. Assuming for the moment that this petition tolled AEDPA's statute of limitations, Satterfield's time began to run

11

when the Pennsylvania Supreme Court denied reconsideration of its order dismissing the King's Bench Petition on October 11, 1996. The statute of limitations then ran until January 13, 1997, when Satterfield filed a petition for relief pursuant to the PCRA, which is conceded to have tolled AEDPA's one-year limitation until the petition was finally denied on April 30, 2001. The statute of limitations ran from that date until January 23, 2002, when Satterfield filed his pro se petition for writ of habeas corpus in federal court. If the King's Bench Petition tolled AEDPA's statute of limitations, Satterfield timely filed his federal habeas petition. The timeliness of Satterfield's federal habeas petition therefore hinges on whether his King's Bench Petition was "properly filed" with the Commonwealth.

## 1. The Meaning of "Conditions to Filing"

In Artuz v. Bennett, 531 U.S. 4 (2000), the Supreme Court held that a petition is properly filed when "its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Id. at 8. A properly filed petition must be in the proper form, and be timely delivered to the proper court or office. Id. The key distinction developed in Artuz is between "condition[s] to filing," which go to the application for post-conviction review, and "condition[s] to obtaining relief," which go to the individual legal claims contained within the application for review. See id. at 11. Failure to satisfy the former prevents a petition from being "properly filed," which in turn prevents application of AEDPA's tolling provision. Failure to satisfy the

12

latter does not prevent statutory tolling.  Artuz, 531 U.S. at 10 ("The statute . . . refers only to 'properly filed' applications . . . .").

Untimely filing, absence of jurisdiction, failure to pay fees, and failure to obtain a requisite certificate of appealability are all examples of flaws going to the application for relief itself.  See Pace v. DiGuglielmo, 125 S. Ct. 1807, 1812–13 (2005) (discussing untimely filing and absence of jurisdiction); Artuz 531 U.S. at 8–9 (discussing filing fees and certificates of appealability).  These requirements prevent tolling because they "go to the very initiation of a petition and a court's ability to consider that petition . . . ."  Pace, 125 S. Ct. at 1814.  By contrast, a procedural bar on the relitigation of an issue raised on appeal or a bar on claims that could have been raised on direct appeal are examples of "mandatory state-law procedural requirements" that go to conditions of relief, not conditions of filing.  Artuz, 531 U.S. at 8, 11.

The mere fact that a court reviewed an application before dismissing it does not necessarily mean that an application was "properly filed."  For example, the Court in Pace made clear that a petition ruled untimely by a state court cannot be "properly filed" even if some judicial review is necessary to determine if the filing condition, or an exception to it, is met.  Id. at 1812 (finding timeliness, like "jurisdictional matters and fee payments" to be conditions to filing even though they "often necessitate judicial scrutiny").  If a state court determines that a

13

petition is untimely, "that would be the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was 'entangled' with the merits." Carey v. Saffold, 536 U.S. 214, 226 (2002); see also Pace, 125 S. Ct. at 1813 (consideration by judge of whether petitioner may proceed in forma pauperis does not prevent claim from being dismissed as not "properly filed" for failure to pay filing fees).

2.      **Satterfield's King's Bench Petition Did Not Meet Certain Conditions to Filing Under Pennsylvania Law**

Satterfield appears to concede, while arguing for the application of equitable estoppel, that he "mistakenly asserted his rights in the wrong forum" with respect to his King's Bench Petition. (Appellee's Br. 6, 21.) The District Court likewise found that it was "abundantly clear that the only means of collaterally attacking a conviction is via a PCRA petition." Satterfield I, 218 F. Supp. 2d at 719. We agree that Satterfield's King's Bench Petition was denied for failure to satisfy conditions of filing and therefore was "improperly filed" under Pennsylvania law.

If considered strictly as a petition for habeas corpus, Satterfield's King's Bench Petition was improperly filed under Pennsylvania law. The procedures for filing a petition for post-conviction relief in Pennsylvania are defined by the PCRA.

14

Commonwealth v. Fahy, 737 A.2d 214, 223 (Pa. 1999) ("[T]he PCRA subsumes the writ of habeas corpus with respect to remedies offered under the PCRA."). It required Satterfield to file three verified copies of the application for post-conviction relief with the court in which he was convicted. Pa. R. Crim. P. 901(B) (2005). Satterfield failed to comply because he filed his King's Bench Petition with the Pennsylvania Supreme Court. The Court in Pace implied that such failures to comply with the PCRA's requirements would prevent statutory tolling. 125 S. Ct. at 1813 (the PCRA's timeliness requirement is "every bit as much a 'condition to filing'" as the requirement that three copies of a PCRA petition be filed "with the clerk of the court in which the defendant was convicted").

The King's Bench Petition, if construed as an application for extraordinary relief, also failed to meet certain conditions of filing. Extraordinary relief may be granted "in any matter pending before any court." 42 Pa. Cons. Stat. Ann. § 726 (2005).[7] Because Satterfield had already been convicted and his

---

[7] Section 726 provides:

> Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or magisterial district judge of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of

15

direct appeals exhausted, there was no "pending" matter over which the Pennsylvania Supreme Court could exercise jurisdiction. See In re Assignment of Judge Bernard J. Avellino, 690 A.2d 1138, 1140 (Pa. 1997). The Pennsylvania Supreme Court's lack of jurisdiction goes to the initiation of a petition and its ability to provide relief, and therefore was dismissed for failure to meet a condition of filing. See Pace, 125 S. Ct. at 1812 (finding jurisdictional matters are conditions to filing).

Finally, the fact that the Pennsylvania Supreme Court is vested with the authority to disregard these procedural shortcomings pursuant to its King's Bench powers does not convert Satterfield's improperly filed petition for post-conviction relief into a properly filed petition for purposes of AEDPA. Merely because the Pennsylvania Supreme Court is vested with the authority to exercise its King's Bench powers as it sees fit does not mean that prisoners are therefore granted the power to delay indeterminately AEDPA's statute of limitations by filing King's Bench petitions.[8]

---

> such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done.

[8]While a petition for extraordinary relief is limited to plenary power over cases pending in lower courts, "[t]he 'power of general superintendency over inferior tribunals,' may be exercised where no matter is pending in a lower court." In re Avellino, 690 A.2d at 1140.

16

The Seventh Circuit addressed a similar situation in Brooks v. Walls, 279 F.3d 518 (7th Cir. 2002). In that case, Illinois law provided that a trial judge could examine whether untimely filing was the result of the petitioner's "culpable negligence" before dismissing. Petitioner Brooks contended that any review of her claim for culpable negligence constituted a consideration of the merits, and therefore her petition was necessarily "properly filed." The Court refused to accept this argument, noting that "[i]f this is so, then almost every collateral attack in Illinois is 'properly filed' for purposes of § 2244(d)(2)." Id. at 521. This was so despite the fact that the trial judge could "cast . . . a sidelong glance at the merits" of a petition before deciding whether to dismiss. Id. Analogizing to the doctrine of independent and adequate state grounds and plain error review, the Court concluded that "[a] state does not abandon the benefits of [the independent and adequate state grounds doctrine] by allowing plain-error review – or by accepting untimely collateral attacks when the standards of plain error have been met." Id. at 524. Thus, the Court refused to treat the inclusion of consideration of "culpable negligence" as rendering untimely filed petitions "properly filed" under AEDPA.

Even if the Pennsylvania Supreme Court's justices took a "sidelong glance" at the merits of Satterfield's petition when deciding whether to exercise their King's Bench powers, we find that this would not excuse the substantial procedural deficiencies in Satterfield's King's Bench Petition. See

17

Commonwealth v. Fahy, 737 A.2d at 224 ("[I]t goes without saying that this court's King's Bench powers do not constitute a vehicle by which we may circumvent the time requirements of the PCRA to reach the merits of an appeal."); Cf. Stokes v. Vaughn, 132 Fed. App'x 971, 973 (3d Cir. 2005) (non-precedential per curiam) (finding Pennsylvania Supreme Court's dismissal, "without comment," of prisoner's petition for allowance of appeal nunc pro tunc "indicates that it did not accept [petitioner's] petition . . . as properly filed under state law, and thus the pendency of the [petition] did not result in statutory tolling").

We conclude that Satterfield's King's Bench Petition was dismissed for failure to comply with conditions of filing imposed by Pennsylvania law.

### 3. A Petition For Relief That Is Improperly Filed Under State Law May Not Be Treated As Properly Filed For the Purposes of AEDPA

The remaining question in this case is whether a petition for post-conviction relief, improperly filed under state law, may nonetheless be considered "properly filed" for purposes of AEPDA's tolling statute. We conclude that it may not here.

In Satterfield I, the District Court noted that, at the time, it remained an open question whether the Third Circuit's "flexible approach" to AEDPA's "properly filed" requirement

18

extended to petitions seeking remedies "not available under Pennsylvania law." 218 F. Supp. 2d at 720–21. Judge DuBois decided the issue in favor of Satterfield, finding that his King's Bench Petition was sufficiently similar to a PCRA petition to count as properly filed. Id. at 721. The District Court's opinion relied on Nara v. Frank, which held that an untimely petition may nonetheless constitute a properly filed application under § 2244(d)(2) so long as it is "akin to an application for state post-conviction or other collateral review." 264 F.3d 310, 316 (3d Cir. 2001) (finding a motion to withdraw a guilty plea nunc pro tunc was sufficiently similar to a PCRA petition to warrant equitable tolling under § 2244(d)). In his opinion, Judge DuBois recognized that the Supreme Court's holding in Carey v. Saffold may have undermined his analysis, but noted that "this determination is one better left to the Third Circuit." Satterfield I, 218 F. Supp. 2d at 722 n.8.

Consistent with Judge DuBois' recognition, we subsequently held that Carey overruled Nara to the extent Nara implied that an untimely petition for state collateral relief may be deemed "properly filed" under AEDPA. Merritt v. Blaine, 326 F.3d 157, 166 (3d Cir. 2003) ("[D]ecisions such as Nara v. Frank . . . to the extent they hold that petitions untimely under state rules nonetheless may be deemed properly filed, were wrongly decided.").

An untimely state petition for post-conviction relief cannot be "properly filed" for purposes of § 2244(d)(2).

19

<u>Pace</u>, 125 S. Ct. at 1811. The Court expressed particular concern that allowing untimely state applications for post-conviction relief to toll AEDPA would transform AEDPA's statute of limitations into "a <u>de facto</u> extension mechanism." <u>Id.</u> at 1812.

Although <u>Pace</u> and <u>Merritt</u> dealt specifically with cases involving untimely state-law petitions for post-conviction review, we find that the logic of those cases applies to cases such as this, where the state petition is improperly filed for reasons other than timeliness. <u>See</u> <u>Brown v. Shannon</u>, 322 F.3d 768, 776 n.5 (3d Cir. 2003) ("Pennsylvania law . . . did not (and does not) recognize extra-PCRA petitions like Brown's notice of appeal <u>nunc pro tunc</u>. Because such petitions are improperly filed as a matter of state law, it seems doubtful that they may be deemed 'properly filed' within the meaning of § 2244(d).").

A rule allowing prisoners to toll AEDPA's statute of limitations by filing applications not conforming with state law would undermine the purpose of AEDPA. Petitioners could, with the exercise of some creativity, deliberately delay the onset of AEDPA's statute of limitations by filing numerous petitions "akin" to legitimate state-law petitions for post-conviction relief – creating just the "<u>de facto</u> extension mechanism" feared by the Supreme Court in <u>Pace</u>. Other circuits have arrived at similar conclusions. <u>See</u>, <u>e.g.</u>, <u>Sibley v. Culliver</u>, 377 F.3d 1196, 1202–04 (11th Cir. 2004) (assuming petition filed with Florida Supreme Court to be a petition for collateral review, refusing to toll statute in part because petition was not "properly filed" for

20

failure to comply with Alabama laws governing the location and form of filing); Adeline v. Stinson, 206 F.3d 249, 253 (2d Cir. 2000) ("[T]he filing of creative, unrecognized motions for leave to appeal" does not trigger tolling pursuant to § 2244(d)(2)).

Where state law mandates that petitions for collateral relief be resolved through a unified system in a definite period, a practice of accepting non-conforming petitions as "properly-filed" for the purposes of AEDPA would encourage prisoners to abuse state post-conviction procedures, undermining the finality of state-law judgments. This is exactly what AEDPA was designed to prevent. Carey, 536 U.S. at 220 ("The exhaustion requirement serves AEDPA's goal of promoting comity, finality, and federalism.") (citation omitted); Duncan v. Walker, 533 U.S. 167, 178 (2001) (AEDPA's purpose is not only to further the interests of comity and federalism, but also to further finality of convictions).

We conclude that Satterfield's King's Bench Petition was not "properly filed" for purposes of § 2244(d)(2) and therefore did not toll AEDPA's one-year statute of limitations. Thus, Satterfield's federal habeas petition should be dismissed as time-barred unless equitable principles warrant tolling of the statute of limitations.

### C. SATTERFIELD HAS NOT DEMONSTRATED DILIGENCE AND EXTRAORDINARY CIRCUMSTANCES JUSTIFYING EQUITABLE TOLLING OF AEDPA'S STATUTE OF LIMITATIONS

21

Having failed to meet AEDPA's one-year statute of limitations, Satterfield's petition can only be saved by application of the doctrine of equitable tolling. Equitable tolling is available "'only when the principle of equity would make the rigid application of a limitation period unfair.'" Merritt, 326 F.3d at 168 (quoting Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001)). A petitioner seeking equitable tolling bears the burden to show that he diligently pursued his rights and that some "extraordinary circumstance stood in his way." Pace, 125 S. Ct. at 1814.

Equitable tolling may be had if: "(1) the defendant has actively misled the plaintiff; (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights; or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." Fahy v. Horn, 240 F.3d at 244 (citing Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999)). There are no allegations that the Commonwealth misled Satterfield regarding his claim. Therefore equitable tolling must be justified either because of extraordinary circumstances or a timely assertion of rights in the wrong court.

Satterfield alleges "extraordinary circumstances" in the form of a prison riot that deprived him of his legal materials in 1989. He concedes, however, that the materials were replaced by May 4, 1995, almost a full year before the AEDPA statute of limitations went into effect on his claim. (Appellee's Br. 22.) Where a petitioner is ultimately able to file his habeas petition,

22

with or without having received replacement materials, the deprivation of legal documents does not justify equitable tolling. See Brown, 322 F.3d at 773 (failure of attorney to obtain a complete set of trial transcripts not an "extraordinary circumstance[]" justifying equitable tolling).

Equitable tolling may also apply if Satterfield's improperly filed King's Bench Petition constitutes a timely application for relief in the wrong forum. Jones v. Morton, 195 F.3d at 159. The Commonwealth claims that the "wrong forum" test does not toll the federal habeas deadline on the basis of a state collateral-relief petition filed with the wrong state court. (Appellants' Reply Br. 2–3.) The Commonwealth is correct that cases interpreting the "wrong forum" element of Jones v. Morton usually refer to a peremptory filing in federal court prior to exhaustion of state-law claims. See Pace 125 S. Ct. at 1813 (noting the right of a petitioner to file a "protective petition" in federal court to guard against AEDPA's statute of limitations). Because Satterfield has failed to exercise reasonable diligence in the pursuit of his claims, we do not decide whether a petitioner who files a state-law petition in the wrong state court may invoke the doctrine of equitable tolling for filing in the "wrong forum."

Even if Satterfield's filing in the wrong court constituted an extraordinary circumstance, he would not be eligible for equitable tolling because of his lack of diligence in pursuing his petition. The record shows that Satterfield waited nearly a year

23

to initiate the process of petitioning for post-conviction relief alleging ineffective assistance of counsel after receiving replacement legal materials. Following dismissal of his PCRA petition, he waited more than eight months to file his habeas petition in federal court. Such a delay demonstrates that Satterfield did not diligently pursue available routes to collateral relief. Pace, 125 S. Ct. at 1815 (The "lack of diligence precludes equity's operation" where petitioner waited years to bring first post-conviction claim, and over five months after denial of state post-conviction relief to pursue federal habeas corpus).

## V. CONCLUSION

For the foregoing reasons, the order of the District Court granting Appellee's petition for habeas corpus is REVERSED and the petition is ordered REMANDED for dismissal in accordance with this opinion.

24