

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-9-2006

# Hanani v. NJ Dept Env Prot

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3157

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Hanani v. NJ Dept Env Prot" (2006). *2006 Decisions.* Paper 215.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/215

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3157

———

MANAL HANANI,

Appellant

v.

STATE OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION,
BARKER HAMILL, PHILIP ROYER,
ROGER TSAO, officially and individually, JOHN DOES 1-100,
individually whose identities are currently unknown

———

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil No. 03111-03
District Judge: The Honorable Garrett E. Brown

———

Submitted Under Third Circuit L.A.R. 34.1(a)
June 28, 2006

Before: BARRY, VAN ANTWERPEN, and SILER[*], Circuit Judges.

(Filed:  November 9, 2006)

———

OPINION OF THE COURT

———

_____

[*]The Honorable Eugene E. Siler, Jr., Circuit Judge, United States Court of Appeals for the
Sixth Circuit, sitting by designation.

**SILER,** Circuit Judge

Plaintiff Manal Hanani appeals the district court's grant of summary judgment for the New Jersey Department of Environmental Protection ("DEP") and individual defendants Barker Hamill, Philip Royer, Roger Tsao, and John Does, persons whose identities are currently unknown (all collectively referred to as "Defendants"). Hanani brought suit under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New Jersey Law Against Discrimination ("NJLAD"), N.J. STAT. ANN. § 10:5-1 *et seq.*, alleging employment discrimination for failure to promote. On appeal Hanani asserts that in 2001 and 2002, she and other foreign employees were denied promotions, and that DEP Bureau Chief Hamill promoted four white Americans to supervisory positions. For the following reasons, we AFFIRM.

## FACTS

Born in Egypt, Hanani is a naturalized citizen of the United States. In 1988, she started working as an Environmental Engineer Trainee for DEP Bureau of Safe Drinking Water. At the time of this dispute, Hanani held the job title Principal Environmental Engineer.

The DEP is divided into various operational Administrations, one of which is the Water Supply Administration. That administration is divided into two separate bureaus: (1) the Bureau of Safe Drinking Water ("Bureau") and (2) the Bureau of Water Allocation. Hamill was the Chief of the Bureau. Hamill reported directly to three Section Chiefs: Royer, Vince Monaco and Sandra Kreitzman. Employees within the Bureau are classified as either "Environmental Engineers" or "Environmental Specialists."

In 1999, a supervisory Environmental Specialist position was posted as a provisional appointment. The position was open to Principal Environmental Engineers, Principal Environmental

2

Specialists, and Geologists. Thirteen DEP employees applied for the provisional position. All applicants were interviewed by a panel of four DEP officials that included Hamill, Royer, Kreitzman, and Nancy Goreman. Carla Hunt, a human resources employee, supervised the selection process but did not evaluate the potential candidates. Of the thirteen candidates, four were foreign nationals – Hanani, Jay Patel, Adekunle Oguntala, and Myonsgun Kong. At the time of the posting and interview process, Hanani and the other three applicants of foreign ancestry held engineer titles.

The applicants were evaluated on the basis of their resumes and their responses to a series of seven interview questions and then ranked in numerical order. The performance ratings ("PARs"), which evidenced the candidates' prior performance and experience in the Bureau, were not considered. In 2000, the Bureau Administrator, Shing Fu Hsueh, announced that Linda Friedman, a white female, had been awarded the provisional appointment. None of the candidates of foreign origin was ranked in the top five. At sixth, Oguntala was rated the highest of those of foreign origin. Hanani was ranked thirteenth and Patel twelfth.

In 2001, Hanani met with Hsueh to discuss Friedman's appointment to the provisional title and expressed that she was being discriminated against. Shortly thereafter, she filed a grievance with the union, through its representative, John Seiler. She explained that she was denied the promotion based on her national origin. She also complained that Royer, her supervisor, failed to complete a PAR for her during 1995 through 2000, despite her repeated requests to do so. Her grievance was transferred to DEP management. Seiler informed Hanani that the provisional appointment was not a grievable matter because she would again have an opportunity to obtain the position when it was posted for permanent status. On October 31, 2000, Royer completed a PAR for Hanani and then transferred the task of completing the remaining PARs to Patricia Craver.

3

The provisional position held by Friedman as Supervising Environmental Specialist was posted for permanent status in October 2000. Only employees holding the title of Principal Environmental Specialists were permitted to apply for the permanent position. As a result of the application requirements, all Principal Environmental Engineers, including Hanani, were excluded from consideration.

Hanani still applied for the position, but her resume was refused. Hanani was allegedly informed by Hunt that the decision to exclude engineers from the applicant pool was not made by Bureau management, but instead by the New Jersey Department of Personnel ("NJ DOP"). After the competitive examination for the permanent position, Friedman was selected to fill the vacancy although Friedman's examination score did not place her in the top three candidates. Hanani alleges that because of DEP regulations, Friedman could not be promoted unless the three highest ranking applicants were first promoted. She maintains that in October 2001, the Bureau management team, including Hamill and Royer, manipulated DEP rules and promoted the three highest ranking applicants - Patricia Bono, William Dietze, and Mathew Maffei - from Principal to Supervisory positions. The promotions allegedly violated DEP rules requiring that vacancies be posted and subject to a competitive examination process.

In January 2002, Hanani met with Royer to again request a promotion. She complained that the other promotions were made within the Bureau and that the process had been manipulated to ensure that Friedman obtained the supervisory promotion. The meeting was moved to Hamill's office where he asked why she had not applied for the permanent position. She explained that she had been precluded from applying. Royer and Hamill stated that they were not aware of the decision to exclude Environmental Engineers from applying and that it must have been a decision made by

4

the NJ DOP. As a result of the meeting, Hanani investigated who made the decision to exclude Environmental Engineers from applying.

On February 1, 2002, she forwarded an email to Susan Mannix, the NJ DOP employee who had signed the October 2000 job position, asking: "Was the Decision made by the appointment authority, was it made by the DEP Personnel or by the NJ State Dept. Of Personnel?" Mannix responded that the decision had been made by the appointing authority, DEP. Craig Stephens, DEP Director of Personnel, explained that the decision to exclude engineers was not made by the Department of Personnel, but instead by the "program," or internally within the Bureau. Hanani claims that defendants Royer and Baker lied by feigning ignorance that engineers had been excluded from applying for the permanent position and that this is further evidence of discrimination.

On February 14, 2002, Hanani filed a charge of discrimination with the New Jersey Division of Civil Rights ("NJDCR") and the Equal Employment Opportunity Commission ("EEOC"). That same day she received a letter confirming that the Bureau management was involved in the decision to exclude engineers from eligibility for the permanent position. In her EEOC charge, she alleged that she was denied the promotion to the supervisory position based on her Egyptian national origin. She further alleged that Hunt informed her that her name had been removed from the list of those being considered for the promotion on February 5, 2001. She received a letter from the NJDCR advising her that it would process her complaint and forward its findings to the EEOC.

The complaint underlying this case was filed in 2003. Hanani claimed that she was denied a supervisory promotion based on national origin discrimination. Hanani also asserted retaliation and hostile work environment claims, as well as common law tort claims related to an incident with Tsao. She claimed a pattern of discrimination and harassment beginning as early as 1992. She

5

stated that she was required to do microfilming work for the entire Bureau.  She suggested that the work was more appropriate for secretaries, though Hanani did receive credit for completing the task in her PARs.  She also alleged discrimination in her PAR reviews.  Defendant Royer did not complete PARs for her between 1995 and 2000.  She highlighted as evidence of discrimination a specific interim PAR in April 2002 completed by Craver, the supervisor assigned to complete the PARs following her grievance against Royer.  In this PAR, Craver gave Hanani the highest overall PAR rating, but scored her second highest in the job knowledge/skill category.  This marked a decreased subcategory score from her previous two PARs, and she alleged that the reduction was a pretext for discrimination.

Hanani further maintained that Royer made two discriminatory statements to her.  The first statement occurred during the time of the Gulf War.  He allegedly asked Hanani which side she was on.  The second statement was in January 2002 when she asked him why she was not promoted.  Royer allegedly responded, "Your name is enough."

Hanani also stated that she was subjected to retaliatory harassment on several occasions after she filed her EEOC discrimination charge.  First, she claimed that she was assigned a substantial increase in permit work, requiring longer hours including weekends.  She asserted that Royer instructed Craver and Tsao to make grammar corrections and other unimportant edits to the permits in order to harass her.  Her assault and battery claim relates to an incident with Tsao when Hanani complained about the changes he had made to one of her permits.  In July 2002, Tsao allegedly screamed in her face and poked her in the shoulder.  As a result of this alleged incident, Hanani, who was thirty-six years of age, suffered a stroke.   She never returned to work.

The district court found that Hanani (1) may not bring a retaliation claim under 42 U.S.C.

§ 1983 to circumvent Title VII's filing requirements; (2) was barred by the Eleventh Amendment from Section 1983 and NLAD claims against the State of New Jersey and the DEP; (3) was untimely in filing her claims that she was not promoted based on national origin discrimination; and (4) could not avail herself of equitable tolling because she did not diligently seek relief. It also found that her Title VII retaliation and hostile work environment claims did not fall within the scope of her EEOC charge and that her tort claims were barred by the New Jersey Workers' Compensation Statute. She does not appeal the dismissal of her tort claims.

## ANALYSIS

We review the district court's grant of summary judgment de novo. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). Summary judgment is appropriate if there are no genuine issues of material fact presented and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### 1. Statute of Limitations

In employment discrimination actions, the limitations period begins with the "time of the discriminatory act." *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 842 (3d Cir. 1992) (emphasis omitted) (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)). However, where the discriminatory conduct constitutes a "'continuing violation,' the statute of limitations begins to run on the date of the last occurrence of discrimination, rather than the first." *Id.*

Hanani alleged that the wrongful act was the denial of promotion on the basis of national origin. She alleged before the EEOC that "on or about January 10, 2001, she applied for a promotion to the position of Specialist, and on or about February 5, 2001, Respondent's Unit Manager [Hunt] told her that her name was removed from the list of those being considered for the

7

promotion." She does not challenge this fact. Nevertheless, she now claims that her failure to promote claims accrued no earlier than October 9, 2001, the promotion date of Bono, Dietze, and Maffei.

"[A] claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong." *Oshiver v. Levine, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994). The district court determined that her injury occurred no later than February 5, 2001, when Hunt notified her that her name had been removed from the list. We agree.

Claims brought pursuant to Title VII must be filed with the EEOC "within 300 days after the alleged unlawful employment practice occurred." 29 U.S.C. § 626(d)(2). Her claim accrued on February 5, 2001; thus, she was required to file by December 2, 2001. However, the claim was not filed until February 14, 2002, some 374 days later. With regard to Section 1983, the timeliness of a cause of action is determined by the state statute of limitations regarding personal injuries, which, in this instance, is two years. *See* N.J. STAT. ANN. § 2A:14-2. As her claim accrued on February 5, 2001, her June 30, 2003, complaint was not filed within the two years. Under the NJLAD, the limitation period is established by the nature of the injury for which recovery is sought. Personal injury claims based upon discrimination are subject to the two-year statute of limitations set forth in N.J. STAT. ANN. § 2A:14-2. Thus, the following claims were untimely: (1) violation of Title VII – national origin discrimination; (2) discrimination in violation of Section 1983; and (3) national origin discrimination under the NJLAD.

**2. Equitable Tolling**

Hanani's first argument is that the district court erred by finding that equitable tolling did

8

not apply to her failure to promote claim because (1) she was lied to and misled by the human resources representative of DEP; (2) her reliance on the human resources representative's statement was not unreasonable; and (3) she was diligent once she discovered the misrepresentation. She argues that her Title VII claims should be equitably tolled because, though she knew she had been denied promotion, she had "no inference of discrimination" due to DEP's alleged "misrepresentation."

"Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed." *Oshiver*, 38 F.3d at 1387. Generally, "equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.*

We have recognized that, in "exceptional circumstances," principles of equitable tolling may warrant consideration of an otherwise untimely cause of action. These situations arise when some extraordinary circumstance prevents a plaintiff from asserting a right despite the exercise of reasonable diligence. *See Merritt v. Blaine*, 326 F.3d 157, 168 (3d Cir. 2003). To invoke the doctrine, the plaintiff must show that due to deception, "he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim." *Oshiver*, 38 F.3d at 1390. Upon such a showing, the statute of limitations will not begin to run "until the facts which would support the plaintiff's cause of action are apparent." *Id.* at 1389.

Hanani specifically cites *Oshiver* for the proposition that equitable tolling should excuse the statute of limitations because of Defendants' deception. She asserts that she acted as a reasonably

9

prudent person regarding her rights when she relied upon information that the decision to exclude engineers from eligibility for the permanent job posting "was made by NJ DOP." Hanani claims that if the employment criteria had been set by the NJ DOP, as she had been led to believe, then she would have had no reason to suspect national origin discrimination. Therefore, she asserts that the statute of limitations should begin no earlier than January 2002, the date when Hanani allegedly first began to doubt that the NJ DOP was responsible for the decision to exclude engineers.

However, the facts of this case do not support Hanani's argument. Her previous knowledge and statements about the discrimination she faced preclude a finding of exceptional circumstances that justify equitable tolling. Hanani testified that she was discriminated against starting in 1995, and later corrected that statement to note that the discrimination "might have started before even '95." In any event, she alludes to a pattern of discrimination beginning around 1995. She stated, "I know I was discriminated against from the beginning of my employment and that was very obvious."

Hanani first complained that she was denied a promotion due to discrimination in July 2000 when the provisional appointment was awarded to Friedman. Hanani met with Hseuh, a director, to discuss her belief that she was being discriminated against. That same month, she filed a grievance with her union. In addition, there is evidence that Hanani knew that her co-employee Oguntala complained of national origin discrimination in the Friedman promotion in July 2000. Hanani had to know of the alleged discrimination at that time. At the very least, Hanani learned of her denial of promotion to the permanent position on February 5, 2001. Yet, her complaint was filed approximately two years and five months after her failure to promote claim accrued.

Moreover, equitable tolling is not warranted because Hanani did not act diligently. "A

10

petitioner seeking equitable tolling bears the burden to show that he diligently pursued his rights and that some 'extraordinary circumstance stood in [the] way.'" *Satterfield v. Johnson*, 434 F.3d 185, 188 (3d Cir. 2006) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408 (2005)).

Hanani challenges the district court's finding that she did not act as a reasonably prudent person by not investigating whether the DOP was the decision-maker. She claims that it was reasonable for her to rely on the human resources representative Hunt.

The district court found as evidence of a lack of diligence a memo written by Hanani on October 18, 2001 stating that Hunt told her to check with "NJ DOP to see why the decision was made." In spite of that letter, Hanani did not inquire further until February 2002. Hanani fails to demonstrate that she acted with diligence or that extraordinary circumstances justify equitable tolling of the statue of limitations with respect to her claims. All the facts underlying her failure to promote claim accrued when the injury was inflicted, that is, when she was passed over for a promotion.

### 3. Separate Acts of Discrimination

Hanani's second argument is that the promotions of Bono, Maffei, and Dietz were separate acts of discrimination for purposes of the statute of limitations of Title VII and Section 1983 failure to promote claims. She claims that their date of promotion, October 9, 2001, established the accrual of her cause of action. Thus, she asserts that her June 30, 2003 filing before the district court was timely. She concludes that each promotion was a discrete act of discrimination giving rise to failure to promote claims.

We apply the test established in *Jewett v. Int'l Tel. & Tel. Corp.*, 653 F.2d 89, 91-92 (3d Cir. 1981), to determine whether a series of alleged discriminatory acts should be perceived as a single,

11

continuing violation or whether the series should be more properly understood as a string of discrete acts. In *Jewett*, this court held that to show a continuing violation in the employment discrimination context, "the plaintiff must show more than the occurrence of isolated or sporadic acts of intentional discrimination." *Id.* at 91.

Hanani's failure to promote claim accrued on the day she was denied promotion rather than the day that others were promoted. She is essentially arguing that once her application was denied, any other promotions to other employees are new causes of action for her. This is clearly not the law of this circuit. *See O'Connor v. City of Newark*, 440 F.3d 125, 129 (3d Cir. 2006) ("[The] applicable statute of limitations begins to run at the time the claim accrues, and ... time-barred claims cannot be resurrected by being aggregated and labeled continuing violations." The Supreme Court has stated that a failure to promote is a "discrete act" and that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" for which the time limitations on filing individually applies. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

### 4. Liability of Individual Defendants under 42 U.S.C. § 1983.

Hanani's third claim is that the district court improperly dismissed her Section 1983 claim against the individual defendants on the basis of the Eleventh Amendment. Hanani's argument misinterprets the district court's decision.

The district court did not grant summary judgment on the individual defendants' claims based upon the Eleventh Amendment, nor did the district court state that individuals could not be sued under Section 1983 in their personal capacities. It stated that the individual defendants could not be held liable for conduct of the unknown John Does. The district court noted, "Plaintiff's

12

NJLAD claims against the individual named defendants are discussed below in Section III. C and D."

State officials, sued in their individual capacities, are "persons" within the meaning of Section 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under Section 1983 solely by virtue of the "official" nature of their acts. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). However, the Eleventh Amendment provides the state, state agencies, and state officials with immunity from suits against them in their official capacities.

Hanani is correct in asserting that individuals can be sued in their personal capacities under Section 1983. However, the district court did not make a contrary finding. Instead, it held that her personal capacity claims failed because they were not timely.

### 5. Hostile Work Environment and Retaliation

The district court also dismissed the following claims for inability to establish a prima facie case: (1) hostile work environment claims under Title VII, Section 1983, and the NJLAD; (2) retaliation in violation of Title VII, Section 1983, and the NJLAD.

The district court ruled that the totality of the circumstances were not sufficiently severe or pervasive to support a hostile work environment claim under an objective standard. *See Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 455 (N.J. 1993). We agree that Hanani's asserted instances of harassment are not severe and pervasive and no reasonable jury could link those instances to a retaliatory animus. *See Jensen v. Potter*, 435 F.3d 444, 449-50 (3d Cir. 2006). Hanani contends that (1) an increase in work volume; (2) conflicting grammatical edits to her work; (3) an allegation that her PAR scores were reduced; and (4) an argument with Tsao show severe and pervasive discrimination. We disagree. The comments of Royer, admittedly the most disturbing, are still

13

insufficient to establish a prima facie case for hostile work environment because they too were not pervasive or severe.

Hanani argued that they gave her additional work and provided conflicting grammar edits. This hardly equates to severe and pervasive harassment similar to a 19- month "barrage" of sex-based comments. *See Jensen,* 435 F.3d at 452 (holding the record showed pervasive retaliatory conduct where plaintiff was regularly berated with retaliatory insults two to three times per week for 19 months, unspecified number of physical threats, and four instances of property damage). The record also disputes that her PAR results decreased. In October 31, 2000, she received the highest possible overall rating of "3-Exceptional." Finally, her argument with Tsao when he allegedly poked her is not pervasive. The dispute arose over some edits he requested that she make. In this isolated incident, she became upset and suffered a stroke as a result of the argument, and retired. She concedes that the argument arose based upon her displeasure in having to perform what she viewed as unnecessary edits. Tsao, also of foreign origin, was not her normal supervisor and there was no history of conflict between the two. Although an unpleasant dispute, this argument was neither pervasive nor severe. *See Harris*, 510 U.S. at 23. Hanani fails to present an argument to the contrary.

Hanani also claims retaliation as another basis for liability.[1] The district court recognized that to establish a prima facie retaliation claim under Title VII , Section 1983, or the NJLAD, Hanani must show: (1) that she engaged in a protected activity; (2) that she suffered an adverse employment

---

[1] Hanani contends that the district erred by finding that her retaliation claim under Title VII was not within the scope of her EEOC charge. She asserts that her charge stated that the basis of discrimination as "National Origin" provided notice to the defendants of any claims that may reasonably arise from an EEOC investigation relating to the charge. Under plenary review, because her claim fails to establish a prima facie claim of retaliation, we decline to address this argument.

14

action; and (3) that there was a causal connection between the protected activity and the adverse employment action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (§ 1983); *Delli Santi v. CNA Ins. Cos*., 88 F.3d 192, 198 (3d Cir. 1996) (NJLAD).

Hanani fails to name what protected activity, if any, she engaged in. She further fails to establish a causal relationship between a protected activity and the actions that were allegedly retaliatory. We will assume that she would designate her EEOC complaint as that protected activity. Nevertheless, she has not presented evidence beyond her allegations showing a causal connection between filing of the EEOC complaint and individual conduct she designates as retaliation.

A plaintiff must demonstrate that a "reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2412-13 (2006) (holding that "the anti-retaliation provision . . . is not limited to discriminatory actions that affect the terms and conditions of employment"). "We speak of material adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth 'a general civility code for the American workplace.'" *Id.* at 2415.

However, Hanani does not claim that she was constructively discharged. Performing edits on behalf of supervisors does not rise to the level of a material adversity. Hanani does not demonstrate a causal connection between her EEOC complaint and the incident with Tsao. There is no evidence that Tsao was aware that she filed an EEOC complaint. We find no connection between the events Hanani designates as retaliatory and her filing of an EEOC complaint.

## CONCLUSION

15

For the above-stated reasons, we AFFIRM the judgment of the district court.